## WEAVER et al. v. PROPST et al.

No. 10595.

Court of Civil Appeals of Texas. Dallas.

May 3, 1930.

Rehearing Denied May 31, 1930.

Eugene De Bogory, of Dallas, for appellants.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, W. F. Johnston, of Houston, and John W. Pope, J. L. Zumwalt, C. G. Hamlin, Jno. C. Read and Geo. T. Burgess, all of Dallas, for appellees.

JONES, C. J.

In a suit filed by J. P. Propst and wife against W. R. Bishop, Morgan Weaver, and wife, Lottie Weaver, Sue Mildred Johnston, D. S. Harris, Lingo Lumber Company, W. B. Bryan, and W. B. Taylor, a judgment was rendered in favor of Propst and wife against W. R. Bishop, Morgan Weaver, and Sue Mildred·Johnston for the sum of $500, and in favor of all other defendants. Weaver and Sue Mildred Johnston have duly perfected an appeal to this court, and Propst and wife have filed cross-assignments of error as to certain defendants; Bishop has not appealed from the judgment. The following is a sufficient statement of the case to understand the nature of the suit and the questions discussed:

Lots 9 and 10 in block 37 of Dallas Land & Loan Company's addition No. 2 to the city of Dallas are involved in this suit. Bishop is the common source of title and, according to the description in the deeds to him, lot 10 fronts 50 feet on the north line of Tenth street and extends north 194 feet along the west line of Madison street, being a corner lot; lot 9 adjoins lot 10 on the west and fronts 50 feet on the north line of Tenth street and extends back between parallel lines 194 feet, each lot being 50x194 feet. Tenth and Madison are principal streets in the city of Dallas; Tenth street is paved and runs east and west for a distance of several miles; Madison street is unpaved and extends north and south for a distance of several miles. Bishop conveyed to Propst 50 feet off of the north end of each of these lots, thereby conveying a lot with a frontage of 50 feet on Madison street and extending back west between parallel lines 100 feet to the west line of lot 9. This conveyance left Bishop in the possession of lots 9 and 10, extending back from Tenth street 144 feet, instead of the original distance of 194 feet. This conveyance to Propst was made on April 30, 1920, and such portion of lots 9 and 10 has nothing to do with this litigation. In the year 1916, Bishop built a concrete driveway on lot 9, which driveway is 6 feet wide and consists of two concrete runners about 60 feet in length. The east line of the east runner is a little in excess of 1 foot west of the southwest corner of lot 10 and of the southeast corner of lot 9. This east runner verges to and crosses the dividing line of those two lots just before its termination, being about 6 inches at its termination on lot 10. There was also constructed a double garage at or near the terminus of this driveway.

On April 27, 1920, Bishop entered into a written contract with one Rochelle for the purchase of lot 9 as it then'existed. This contract stated the consideration to be $5,000, $1,500 of which was to be paid in cash and the remainder in two vendor lien notes. This contract contained the following stipulations: "(a) It is specifically understood and agreed that the owner of the property immediately adjoining the herein contracted for property on the East (lot 10) shall have the use of the concrete driveway runners on the herein contracted for lot; (b) it is also specifically understood and agreed that the double garage on the lot immediately in the rear of the herein contracted for lot is to be conveyed with the herein contracted for property to purchaser herein, but is to be moved on to the contracted for lot at the expense of the purchaser within 30 days after date of final closing of deed." This contract was never placed of record.

On the 6th day of May, 1921, W. R. Bishop executed a deed to Rochelle, conveying lot 9, as such lot then existed, and describing it as follows:

"Situated in Dallas County, Texas, and city, and being South 144 feet of lot 9 in block 37 of Dallas Land & Loan Company's Addition No. 2 to Oak Cliff according to map thereof recorded in Dallas County, Texas, which said block is also known as city block No. 3157/37 according to the official map of the City of Dallas, Texas, said property being described by metes and bounds as follows; beginning at the S.E. corner of said lot 9, which said point of beginning is also S.W. corner of lot 10 in said block, being on the North line of Tenth Street 50 feet W. of intersection of said line of Tenth Street with the W. line of Madison Avenue; thence N. along East line of said lot 9 144 feet to a point; thence West parallel with N. line of Tenth Street 50 feet to a point in W. line of said lot 9; thence South along said line of said lot 9, 144 feet to a point in North line of Tenth Street, which said point is the S.W. corner of said lot 9; thence East along said line of Tenth Street 50 feet to the place of beginning."

The consideration mentioned in this deed is $6,000, of which $2,500 is paid in cash and the remainder by the execution of two vendor lien notes, secured also by deed of trust on the land conveyed. This deed was at once filed of record. Lot 9, as described in the above deed, passed by mesne convey-

874

ances to W. B. Bryan, his deed being of date January 14, 1926; all deeds including Bryan's were duly recorded.

On February 18, 1926, Bryan and wife executed a mechanic's lien contract with Lingo Lumber Company for the erection of improvements on said lot, executing a note for $17,500 and also a deed of trust on said lot to further secure the payment of the note. The mechanic's lien contract and deed of trust both contained, the same description of the property as contained in the Rochelle deed, and were both recorded.

On April 16, 1926, construction of the improvements contracted for by Bryan was begun, the foundation of which was placed so as to completely block the said driveway. Propst at once protested the action of Bryan in blocking the driveway, claiming his rights therein and, the protest being denied by Bryan, on the same day filed his original petition in this cause. Propst claimed title to one-half of said driveway and, in addition, prayed for an injunction restraining the action of Bryan. The building on said lot was constructed, being a two-story brick residence, approximately 40x80 feet, and the driveway was thus permanently blocked for use by Propst. The ownership of this lot, by mesne conveyances, passed to Harris; the owner of the lot at the time of the trial of the case having purchased same pending the litigation; the intermediate owners being the Lingo Lumber Company and Taylor, both of whom are defendants in this suit. When Harris purchased he had no knowledge of the unrecorded contract of sale between Bishop and Rochelle, had no knowledge of any rights of plaintiffs in the driveway, and when he first saw the property the building was completed, Propst had turned his garage around to face Madison street, and was using Madison street exclusively for ingress to and egress from his garage.

On May 27, 1921, Bishop and wife conveyed to Morgan Weaver by deed, containing covenants of general warranty, lot 10 as said lot existed at that time. The description in the deed is as follows:

"Situated in Dallas County, Texas being lot 10 in block 37 of Dallas Land & Loan Company's Addition No. 2 to Oak Cliff, being the South 144 feet of said lot 10, the S.W. corner of said tract being the center of the driveway, which is a community driveway between lots 9 and 10."

On July 16, 1924, Morgan Weaver and wife conveyed the same property to, Sue Mildred Johnston by deed containing covenants of general warranty. On July 8, 1925, Sue Mildred Johnston conveyed the same property to the Propsts, plaintiffs in this suit, by deed containing covenants of general warranty. All of these deeds were duly recorded. The said driveway was used by the respective owners and their tenants of lots 9 and 10 from April, 1916, until the 16th day of April, 1926, when said driveway was blocked by the beginning of the construction of the Bryan house.

There is no statement of facts, but the trial court has filed very full findings of fact, and this has been supplemented by agreement of the parties in a few matters that were inadvertently omitted from the findings of the trial court. The above-stated facts are taken from the court's findings of fact and are adopted as the findings of this court. The court made findings other than those above given, which will now be stated and discussed.

The basis of the court's judgment, in respect to the amount of damages assessed, is the following finding of fact:

"That the value of said land (one-half of the driveway) and easement at the time plaintiffs purchased the property was the sum of $500.00; that is, the property without the easement and title to one-half of the driveway is worth $500.00 less than with the driveway and easement; that the proportional value of one-half of the driveway and easement therein, as compared to the price paid by plaintiffs, amounts to the sum of $500.00."

The court also made the following finding: "That at the time the plaintiffs purchased the South 144 feet of lot 10 they did so believing they were getting title to one-half of the driveway, as recited in the deed to them, and would not have purchased the property but for the stipulations in the deed and believed they were getting an easement to use said driveway."

The court's conclusions of law are: "That the plaintiffs never acquired title to any part of lot 9 or said driveway; that the title to lot 9 and the entire driveway is in the defendant, D. S. Harris; that the plaintiffs are not entitled to recover as against the defendant, D. S. Harris; that the plaintiffs are not entitled to recover as against the defendants, Lingo Lumber Company and W. B. Bryan and W. B. Taylor." These conclusions of law, we think, follow necessarily from the findings of fact on which such conclusions are based, and they are adopted as the conclusions of law of this court on the issues therein decided. All cross-assignments of error in respect thereto are overruled.

The court also made the following conclusions of law: "That the covenants of warranty contained in the deeds from Bishop to Weaver and Weaver to Johnston and Johnston to plaintiffs have been breached by plaintiffs' loss of the driveway and easement conveyed by said deeds, and plaintiffs have been damaged in the sum of $500.00; that the value of said easement and driveway is $500.00 and plaintiffs are entitled to recover against Weaver, Johnston and Bishop said

sum of $500.00, with interest at six per cent per annum, from July 8, 1925, and all costs."

The pleadings of Propst and wife as against Harris, the owner of lot 9 at the time of the trial, seek a recovery of the land embraced in the east one-half of the driveway and the establishment of a perpetual easement in all of said driveway; as against their grantors they seek a recovery under their warranty of title for damages, because (a) of a failure of title to said strip of land, and (b) of the failure of the right of easement over said driveway. Their petition contained no allegation against Sue Mildred Johnston, their immediate vendor, of fraud or mistake in respect to the failure to secure title to one-half of the driveway and the right to use the driveway, but their suit as against their grantors is solely on the covenants of warranty contained in the respective deeds of Bishop to Weaver, Weaver to Johnston, and Johnston to Propst.

Propst's cross-assignments of error against Harris are based on pleas of limitation on the claim that their deed, duly recorded, clearly described the strip of land in question, and was sufficient, under the three-year statute of limitation (Rev. St. 1925, art. 5507), to give them title to such strip of land. In respect to these cross-assignments we deem it only necessary to state that, in our opinion, the court stated a correct conclusion of law based on its findings of fact in reference to this issue, which conclusions of law we have adopted.

█ A more serious question in this case is as to the correctness of the court's conclusions of law under the findings of fact as to the right of Propst to recover the value of the strip of land and the damages resulting because of the loss of easement in the driveway. The basis of the court's finding and its conclusion of law in this respect is the construction to be placed on the deeds under which Propst holds the property. A conclusion as to the Propsts' right to recover on their warranty from their vendors the value of said strip of land necessarily rests on the construction of these deeds of conveyance. At the time lot 10 was conveyed by Bishop, who is the common source of title, to Weaver, Bishop theretofore had conveyed all right, title, and interest he had in lot 9, including the entire driveway, no interest in any portion of lot 9 then remained in him, and hence he could actually convey only the land embraced in lot 10. The said driveway, as found by the trial court, is located entirely upon lot 9, and in the conveyance of said lot to Rochelle, Bishop reserved to himself no easement in such driveway. It is true that, under the unrecorded contract of sale of lot 9 to Rochelle, there is clearly a reservation in favor of the owner of lot 10 for the use of the driveway. The effect of such contract

was to create an easement in lot 9 for the benefit of the owner of lot 10 and to subject lot 9 to such easement. Such contract was never recorded and, we think, clearly abandoned. About four days subsequent to the execution of this contract, the sale of lot 9 by Bishop to Rochelle was consummated. The deed of conveyance in this sale made no reference to such contract, and the consideration stated in this deed is materially different to that stated in the contract, in that, in the contract the consideration is stated to be the sum of $5,000, $1,500 to be paid in cash, the execution of vendor lien notes for the remainder, and a burden on lot 9 in favor of the owner of lot 10 for the use of the driveway located on lot 9; while in the deed, the consideration is stated to be $6,000, $2,500 to be paid in cash and the remainder in vendor lien notes, with no burden of easement on lot 9 in favor of lot 10. The conclusion is inescapable that Rochelle paid $1,000 more for the lot to escape the contract burden of easement, and that the contract by mutual agreement was abandoned and a new agreement, the one recited in the deed, substituted therefor. As Weaver could take no higher title than that of his vendor, he therefore took title only to the land embraced in lot 10. The same is true in reference to each of the vendees of this lot. However, if the deed executed by Bishop to lot 10, and the deed executed by each subsequent vendor of this lot, clearly import a conveyance of said one-half of the driveway on lot 9, then each of said vendors would be responsible in damages on the general covenant of warranty contained in each deed, because of the failure of the title to this portion of the land purported to be conveyed.

█ The question then is: Do the deeds under which Propst holds lot 10 import a conveyance of the east one-half of the driveway actually located on lot 9? The clause in the deed under which this contention is made reads:

"Located in the City and County of Dallas and State of Texas and being a part of lot 10 in block 37 of the Dallas Land & Loan Company's Second Addition to Oak Cliff, and being 144 feet off of the entire South end of said lot, the S.W. corner of said lot being in the center of the community driveway between lots 9 and 10 in said block."

The southwest corner of lot 10 is the southeast corner of lot 9 and is located, according to the recorded map, 50 feet west of the intersection of the north line of Tenth street with the west line of Madison street. Lot 9 was sold with reference to this description, and the description that the land sold in lot 10 is 144 feet off of the entire end of said lot clearly and definitely locates its southwest corner as above stated. Therefore the statement in the deed that the southwest corner is

**876**

in the center of the driveway is a false location of said corner, and as the deed contains language which clearly points out the true corner, said false statement as to the location of this corner must be ignored. Arambula v. Sullivan, 80 Tex. 615, 16 S. W. 436; Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930; West et al. v. Houston Oil Co. et al., 46 Tex. Civ. App. 102, 102 S. W. 927.

We therefore hold that the deeds of conveyance of lot 10 do not fairly import to convey any other land than that embraced in lot 10, as such lot existed at the time the conveyance was made by Bishop.

■ It is true that, in a finding of fact above quoted, the trial court found that the Propsts believed they were purchasing the land embraced in the east one-half of said driveway. In view of the fact that this is a suit on the warranty of title and not a suit by Propst against his immediate vendor because of a failure to secure title to the land he thought he was buying, by reason of the fraud or mistake of such vendor, such finding of fact must be held to be on an immaterial matter and cannot be made the basis for the judgment rendered in so far as it is based on the failure of title to the east one-half of the driveway. Another conclusion must be drawn in respect to the loss of said easement.

■■ When Bishop sold lot 10 to Weaver and Weaver sold it to Johnston and Johnston sold it to Propst, this driveway, under the findings of the court, was in undisturbed use by the owners of lot 10. Because of this fact there was at least an apparent easement in the driveway for the benefit of lot 10. The reference to this apparent easement, in the deeds under which Propst claims, is an assurance to Propst that such an easement actually existed. This reference is in the description above quoted, in which the driveway is referred to as a community driveway, and these deeds therefore make such easement an appurtenance to lot 10 and is included in the general covenant of warranty. The rule in this respect, supported by authorities, is thus stated by 15 C. J. 1287:

"Appurtenances being within the scope and meaning of the covenant of warranty a failure of title thereto is a breach of the covenant. Thus it has been held, that if the description of the land conveyed is such as to import a warranty that the streets which bound the land exist, a failure to open them is a breach of the covenant, and that an eviction by paramount title from an easement in an alleyway, passing under the deed as appurtenant to the premises, was a breach of the grantor's covenant of warranty. In order, however, that the loss of such a right may constitute a breach of the covenant, it must be a legal appurtenant to the land within the meaning of the deed."

The deed declares that the driveway is a community driveway, thus clearly importing that it is a driveway to be used in common by the owners of lots 9 and 10. The deed clearly gave the legal right to the use of this driveway by the owner of lot 10. This right has been successfully denied, and we therefore hold that the warranty in this respect has failed and that the Propsts are entitled to be remunerated therefor.

The court does not make a separate finding as to the value of the use of this driveway, but his assessment of damages includes both the strip of land and the value of the use of the driveway. For this reason, this case will have to be reversed and remanded as between the Propsts, Weaver, and Sue Mildred Johnston, and, while Bishop is not a party to this appeal, it necessarily follows that the judgment against him must also be set aside, and the case tried on the issue as to the amount of damages recoverable by the Propsts for loss of the use of the driveway against Bishop, Weaver, and Sue Mildred Johnston. The judgment as to all other parties will be affirmed.

Affirmed in part; reversed and remanded in part.