# North Braddock Borough's Annexation Case.

Argued October 1, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph F. Mayhugh,* Borough Solicitor, for appellant.

*O. K. Eaton,* with him *M. E. Evashwick* and *Charles L. McCormick,* for appellee.

OPINION BY STADTFELD, J., February 26, 1937:

This is an appeal by the Borough of North Braddock from an order of the Court of Quarter Sessions of Allegheny County, sustaining a complaint by the Township of North Versailles against an Ordinance of the Borough of North Braddock, purporting to annex 31.6 acres of land described in the ordinance as situate in North Versailles Township and contiguous to the Borough, and adjudging said ordinance lacking in propriety and void and of no effect.

The right of complaint against a borough ordinance is permitted by Section 1010 of the General Borough Act of May 4, 1927, P. L. 519, as amended by the Act of May 18, 1933, P. L. 818. The amendment expressly provides that "The court shall have jurisdiction to review the propriety as well as the legality of ordinances affecting annexation of territory." The complaint charged that the annexation ordinance is not only illegal, but wholly improper under existing circumstances.

The facts in this case are correctly set forth in the opinion of the court below by MARSHALL (ELDER W.) J., from which we quote: "The dividing line between North Versailles Township and North Braddock Borough has always been the center of the stream known as Turtle Creek. Some forty years ago a portion of Turtle Creek was found to lie in the path of an enlargement or extension of the Edgar Thompson Steel Works; accordingly the owners of that plant dug a new channel into which they diverted the flow of the creek, and after filling in so much of the old channel as had been rendered useless by the change, occupied it with various of their structures. Thenceforth, the land lying between the old and new channels continued to be assessed for tax purposes as a part of the township, although the structures erected thereon were assessed in the borough. In April, 1933, the township instituted a proceeding in this court at No. 33 April Sessions,

1933 (on appeal at No. 187 April Term, 1936, to this court), reciting that the boundary between the borough and the township was in dispute, and asking the court to ascertain and determine the true location of the same. To settle such dispute, it became necessary to determine the precise location of the original channel of Turtle Creek, manifestly a difficult task at so late a date. The borough and the township contended over the matter for upwards of two years, and at great expense. Eventually, on October 8, 1935, a final decree was entered, from which the borough has appealed to the Superior Court where the case now pends.

"The township had scarcely initiated the suit for determination of the boundary controversy when the borough, on June 21, 1933, and in response to a petition of alleged freeholders, enacted an ordinance designed to annex to the borough all of the township territory lying between the borough limits and the new channel of Turtle Creek, 'for the purpose,' so the petition recited, 'of obviating any further litigation between the township and the borough.' It is this ordinance which is under attack in the present proceeding.

"The area proposed to be annexed contains 31.6 acres and in the ordinance is described by metes and bounds. As described, it has three boundaries: The first is the center line of the new location of Turtle Creek from the Monongahela River to the projection of the North Braddock-East Pittsburgh Borough dividing line; the second is a projection of the dividing line last mentioned; the third is a line more than two-thirds of a mile in length and containing ten angles, which line extends from the boundary of East Pittsburgh Borough to the mouth of Turtle Creek in the Monongahela River. Of the eleven courses which comprise the third boundary, ten were taken from the calls in the charter line of North Braddock Borough, while the eleventh is a line interpolated in order to reach the point of be-

ginning in the mouth of Turtle Creek. The charter line of the borough was prepared many years ago by an engineer named Middlemist, and the testimony taken in the proceeding at No. 33 April Sessions, 1933 (on appeal at No. 187 April Term, 1936 to this court, all of which is in evidence in the present proceeding) establishes that it was obtained, not from an actual survey on the ground, but by using courses and distances found in various deeds, charters and other documents of record. Stated in the vernacular it was merely a paper line (on appeal at No. 187 April Term, 1936, before this court). For purpose of convenience, the third boundary of the annexed area, that is, the line supposedly extending along the borough boundary, will be referred to hereafter as the Middlemist line.

"In the ordinance of annexation, the borough described the territory which it was annexing as 'situate in the Township of North Versailles,' although throughout the disputed boundary proceeding, the borough at all times denied that the limits of the township extended to the Middlemist line. In point of fact, all of the borough's proof in the latter proceeding was offered in an effort to establish that the borough limits extended for a considerable distance beyond the Middlemist line and all of the various lines which, at one time or another during the course of the proceeding, the borough advocated as being the true boundary line lie considerably nearer to the present channel of Turtle Creek than does the Middlemist line.

"The purpose of this somewhat detailed recital of the facts is to make clear the inconsistency between the borough's position and claims in the disputed boundary case and in the present annexation proceeding, and thus to give point to the township's contention of impropriety."

A motion to quash the appeal of the Township was made in the court below and was overruled.

The assignments of error in the present appeal are treated by appellant under three heads: (1) on the motion to quash the appeal, appellant claims that the court below erred because (a) the Township did not with its appeal, file bond as required by the Act, (b) the complaint of the Township is not signed by any "person aggrieved;" (2) that the court below erred in sustaining the appeal of the township and (3) the court below was guilty of an abuse of discretion in basing its decree upon evidence of the diminution of territory and the impairment of revenue affecting both the Township and the School District, the latter not having appealed.

Appellant has presented a very learned and comprehensive brief, but it would be to no purpose to answer every proposition therein contained, if the opinion and order of the court below is based on proper evidence and does not show an abuse of discretion, particularly in view of the express power conferred on the court to pass on the *propriety* of the proposed annexation.

(1). As to the refusal to quash the appeal. The appeal in this case was taken under Article 10, Section 1010, of the General Borough Act of 1927, as amended by the Act of May 18, 1933, P. L. 818, which provides that: "Complaint may be made to the Court of Quarter Sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved, within thirty days after any ordinance or resolution takes effect, etc."

Appellants contend that the court committed error in allowing the entry of a proper bond nunc pro tunc as of the date when the defective bond was filed. The cases upon which counsel for the borough relies, *Moritz's Contested Election,* 256 Pa. 537, 100 A. 1033, and *Knoxville School District Election,* 274 Pa. 354, 118 A. 307,

are inapplicable to the question for each of those cases arose under a statute which provided explicitly that "if the said bond shall not be filed as herein provided, the said petition to contest the election shall be dismissed." Such provision being mandatory, the court was powerless to accept a corrected bond after the statutory period had elapsed. The General Borough Act, however, contains no such direction.

In the present case, although the original bond was filed and approved by the Court on August 10, 1933, the Borough of North Braddock filed an answer to the petition for appeal on August 31, 1933, wherein it defended the legality and propriety of the annextion, and it was not until January 29, 1934, more than five months after the bond had been placed of record, that the borough first challenged its regularity. Under these circumstances, the court was of the opinion that it could and should allow a corrected bond to be filed nunc pro tunc, no harm having been suffered by the borough by reason of its absence.

The case is ruled by In Re: *Scottdale Borough Annexation,* 91 Pa. Superior Ct. 1, where a bond was allowed to be filed for the *first* time after the statutory period had expired, owing to the annexing municipality having answered on the merits without questioning the fact that no bond had theretofore been entered.

In *Kerr v. Martin,* 122 Pa. 436, 15 A. 860, it was held error to strike off an appeal from an award of arbitrators, regular in other respects, without a rule upon the appellant to perfect his recognizance.

Is the Township of Versailles a "person aggrieved" by the passage of the ordinance? This is best answered in the opinion of the court below, from which we quote: "The petition for appeal charges that by said ordinance the borough is attempting to take away valuable land from the township for the sole purpose of procuring the taxes to be derived therefrom, and that the effect of the

annexation will be to make it difficult and financially burdensome for the township to maintain its roads and highways. Such result must follow inevitably, if for example, the taxes produced from the territory to be annexed are more than sufficient to pay the governmental service furnished by the township in that territory. Such excess income helps to bear the cost of government in the remaining portion of the township, and if the township be deprived of it, because of the annexation, either the service must be curtailed or the tax rate increased. In this aspect of the matter, it is possible for the township to be seriously aggrieved by the loss of a portion of its revenue-producing territory without compensating relief from its obligation to provide municipal service. This view is strengthened by the provision in the amending statute before mentioned, that 'The court shall have jurisdiction to review the propriety as well as the legality of ordinances affecting annexation of territory.' The propriety of an annexation comes before the court, not automatically, but only upon the complaint of a person aggrieved. Manifestly, if the effect of a proposed annexation will be to dislocate the fiscal affairs and situation of the township, or disproportion the tax burden, or render it difficult or impossible for the township authorities to render necessary municipal service, the persons best able to calculate the impropriety of the annexation are the township officials and not the individual taxpayers.

" 'A grievance is an injury or a wrong done which gives ground for complaint because it is unjust and oppressive': *Borough of Chartiers,* 19 W. N. C. 46, and a party aggrieved is one who suffers from such injustice. Our judgment is that if the consequence of an annexation is to impose an injustice and oppressive burden on the township from which the land is taken (and such is pleaded to be the fact in this case), the township is aggrieved, and acting in the interest of the tax-

payers may properly complain against the ordinance, just as the Supervisors of Upper Tyrone Township, Fayette County, did in the *Scottdale Borough Annexation Case,* 91 Pa. Superior Ct. 1. Our courts have frequently said that persons aggrieved are those who suffer some special injury different from that which affects them and the public generally: *Welsh's Appeal,* 22 Pa. Superior Ct. 392; *Heller's Appeal,* 16 D. R. 647; *Davies v. Crafton Borough,* 48 Co. Ct. 295. The Township of North Versailles is not the general public. It has a special interest in that, if the ordinance is sustained, it will lose the tax on the property in the annexed area. It charges that an oppressive financial burden, affecting its ability to maintain roads and highways, will thereby be cast upon it. Assuming this allegation to be true, then the township will be aggrieved and has standing to complain: In Re: *Ordinance of the Borough of Mount Joy,* 37 Lanc. Law Review 517."

On the question of propriety:

Prior to the passage of the ordinance of annexation, the Township of North Versailles had instituted a proceeding to have determined the true boundary line between the borough and township and said proceeding had not been concluded.

Quoting from the opinion of the court below: "Section 426 of the General Borough Act prescribes that before annexation shall be effective, 'a certified copy of the ordinance, together with a description and a plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation shall be filed in the Court of Quarter Sessions.' The necessary implication is that such description shall be reasonably accurate and correct. In the present case, the borough's engineer testified that the described boundaries of the borough prior to the annexation, as filed of record in this proceeding, will not close by about 385 feet. Accordingly, even though the description of

the area to be annexed has closure to within three-eighths of an inch, as the engineer testified, its addition to the incorrect description first mentioned necessarily renders the description of the enlarged borough likewise incorrect. This is unquestionably the fact, for the borough engineer conceded that to make the latter description close, he would be obliged to 'force some line some place,' using his own judgment as to which of the described courses and distances should be changed.

"We are asked, then, to place the stamp of our approval upon two descriptions of the boundaries of North Braddock Borough (one before, the other following, the proposed annexation) which admittedly are faulty and incorrect to a considerable degree. We are also asked by the borough to approve the statement in the annexation ordinance that all of the territory therein described lies in the Township of North Versailles, and that the Middlemist line which bounds one side of such territory was the true dividing line between borough and township, whereas, at the very moment of enactment of the ordinance, the borough was engaged in prolonged litigation wherein it contended and the court has since found that the Middlemist line was *not* the true division line and that much of the territory now proposed to be annexed was never a part of North Versailles Township. The impropriety of approving a proceeding so lacking in accuracy and predicated upon a fact situation so patently false is manifest.

"...... The fact is that the council of North Braddock Borough, in passing the ordinance of annexation, undertook to legislate a change in the dividing line between the municipalities without knowing where the existing boundary line actually was located. It based its action upon an incorrect and untrue description of its own territory, and it falsely recited that all of the territory then being annexed lay within the township.

Such recital was diametrically opposed to and inconsistent with the position it had assumed and continues to assume in the disputed boundary proceeding. Finally, it lodged in this court descriptions of its old and new boundaries which are faulty and incorrect, the latter description because it will not close, and the former because, in addition to not closing, it fails to specify the true location of the boundary between borough and township. A sense of propriety should have restrained the borough council from attempting annexation until the boundary dispute was settled; the impropriety of its action under the circumstances, coupled with the falsity and inaccuracies of the descriptions filed require that the ordinance and the annexation be set aside."

Contemporaneously with the filing of this opinion, we have filed an opinion in the case involving the disputed boundary lines, at No. 187 April Term, 1936, which is hereby referred to, and in which we have decided adversely to the claims of the Borough of North Braddock.

On the question of impairment of revenue to the Township of Versailles, the court below has found upon competent legal testimony: "It is plain, therefore, that if the land of the steel company be transferred from township to borough, the current taxes recoverable by the township, at least so long as the depression continues, will be reduced by from 20% to 25%, thus necessitating either a large increase in the annual tax rate or a sharp curtailment in the servicing of township roads. In either event the citizens of the township will be adversely affected. ...... The proof was uncontradicted that if the annexation becomes effective and school taxes on the steel company's property are no longer available to the School District of North Versailles Township, the annual levy for school purposes must be increased to at least 32 mills to provide revenue

equivalent to that now being received. Since the maximum permitted by the school code is but 25 mills, the normal school needs of the children in the township cannot possibly be supplied if the annexation takes place.

".  .  .  .  .  . If the annexation becomes effective, the borough will receive an additional yield of but $2,500.00 and the School District of but $6,000.00. There was not a breath of proof that such additional revenue is needed for any municipal or school purpose, and even were it received, it could occasion only an infinitesimal reduction in existing tax rates in the borough.

"Aside from the possibility of an inconsequential reduction in its taxes, the steel company would profit not at all by the annexation. There are no roads, streets or alleys in the area to be annexed and the company has no need for any governmental service supplied to residents of the borough, since it guards and polices its own property without assistance from the borough. There was no proof that the other companies which signed the petition would be benefited in any particular.

"So far as can be perceived, the only proper arguments which can be made in favor of annexation are that the present division line which crosses through a large manufacturing plant will be replaced by Turtle Creek, a natural boundary, and that the owners of the property in the affected area desire the change. The wishes of the petitioners for annexation are entitled to respect *(Edgewood Borough,* 130 Pa. 348) and natural boundaries as a rule are preferable to artificial ones, but these are not the only factors to be considered. *The scope of our inquiry has been greatly broadened by the amendment of 1933, which authorizes the propriety of the change to be reviewed. Even though prior to 1933, the impairment of township revenue by reason of the formation of a new borough seems to have*

*been a matter of little concern (Edgewood Borough, supra), we believe such impairment has a direct bearing on the question of propriety of annexation.* With the passage of the depression, the financial situation of North Versailles Township and School District will doubtless become normal, so that loss of one-tenth of the taxable real estate will not impose an insurmountable tax burden on that which remains. At present, however, such withdrawal of taxable property will have a paralyzing effect upon the ability of the township to keep its roads in repair and maintain its schools, and thus will outweigh any possible advantage accruing to the Borough of North Braddock and to the owners of property in the area to be annexed." (Italics supplied).

In view of the uncertainty of the boundary line at the time of the institution of the proceedings for annexation, as the proceedings for the determination of the disputed boundary line had not been concluded, we believe that the proceedings for annexation were premature. Petitioners for annexation were in no position to comply with the provisions of the Act of May 4, 1927, P. L. 519, Art. IV, laying down the procedure for annexation, which requires the filing in the Court of Quarter Sessions of the county, of "a description, and a plot showing the courses and distances of the boundaries of the borough *before* and *after* such proposed annexation, etc." (Italics supplied). See *Annexation of Borough of Jenkintown,* 101 Pa. Superior Ct. 227, 234.

Appellant contends that the evidence as to the effect upon the School District was not admissible as the latter had not appealed. While the School District is a separate corporate entity for the administration of the functions committed to it, yet the interests of the Township and the School District are so co-related, that whatsoever may injure the one also affects the

other, we believe the evidence as to the effect upon the School District was competent in the consideration of the propriety of the proposed annexation.

In view of the broader discretion vested in the court below under the Act of Assembly governing these proceedings, and after a careful examination and consideration of the entire record, we cannot say that there was an abuse of discretion on the part of the court which would warrant a reversal of the order made therein.

The assignments of error are overruled and the order of the court below is affirmed. Appellant to pay costs.