## Dallas Borough Annexation Case.

Argued March 5, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Arthur H. James,* with him *Burt B. Lewis,* for appellant.

*J. C. Valentine,* with him *Robert L. Fleming,* for appellees.

OPINION BY DITHRICH, J., July 19, 1951:

On petition of the Dale Realty Corporation (hereafter called Realty Corporation), the council of the Borough of Dallas passed an ordinance on July 13, 1949, annexing certain land of that corporation lying adjacent to the Borough in the Township of Dallas.

The appellees, the Township and its School District, contested the legality and propriety of the ordinance before the Court of Quarter Sessions of Luzerne County sitting en banc. That court adjudged the ordinance illegal on the ground that the petition upon which it was based was "not signed by a majority of the freeholders of the territory sought to be annexed." This conclusion was reached after findings that the description of the ordinance included, in addition to the land of the sole petitioner, the Realty Corporation, a small triangular piece of land, with a base of 7.22 feet and sides 182 feet in length, belonging to the Wilkes-Barre Transit Corporation, and another piece, 6 to 12 inches in width and 120 feet long, belonging to one Howard Wardan. The ordinance having been found illegal, the court below did not pass on its propriety. Separate, but combined, appeals were taken by the Borough from the order of the court.

The ordinance describes the land annexed, in part, as follows: "Beginning at a corner on the Southerly side of the State Highway . . ., at the intersection of the Northerly side of Car Avenue and Wardan Street . . . [subsequent calls follow, not in dispute here, leading to the last call]; Thence continuing along the Southerly side of State Highway on a curve to the right with a chord on a course of South 71 degrees 27 minutes East 593.63 feet to the place of beginning." The description contained in the ordinance corresponded

exactly with the description contained in the deed under which the Realty Corporation took title.

One difficulty arises out of the physical fact that the corner at the intersection of the northerly side of Car Avenue and Wardan Street is 7.22 feet south of the southerly side of the State Highway. All parties agreed that the portion of the description establishing the beginning point necessarily means that such point is at the corner aforesaid, where an iron pipe is installed, having been placed there at the time the Realty Corporation acquired title, and cannot mean that the point is actually located on the southerly side line of the State Highway. The latter construction is contrary to physical facts. The 14th finding of the court below embodies this agreement as to the beginning point and is undisputed here: "14. The point of beginning . . . of the land described in the ordinance, to-wit, 'the intersection of the Northerly side of Car Avenue and Wardan Street . . .' is not 'on the Southerly side of the State Highway . . .,' but is 7.22 feet distant therefrom."

An added difficulty stems from the use of the phrase, "along the Southerly side of State Highway," found in the final call of the description. The hearing court found as a fact, in disregard of the recital of a course and distance "to the place of beginning," that the line intended by the last call was one coincident with the southerly side of the State Highway. According to its reasoning, the northern boundary does not terminate at the intersection of the northerly side of Car Avenue and Wardan Street (the place of beginning as per finding No. 14), but rather at a point in the southerly side line of the State Highway 7.22 feet from the intersection. The foregoing is derived from finding of fact 19: "Both the description and the map indicate that the northerly boundary of the property of the Dale Realty Corporation is the south-

erly side of the State Highway." It is also implicit in finding of fact 15: "The last course . . . fails to close the description and any survey. The chord extends from the beginning of the curve to the corner of Car Avenue and Wardan Street, but the southerly side of the State Highway at that corner is distant 7.22 feet from it." Thereby is raised the broad question for determination in this appeal. Stated, in a general way, it is whether the lower Court correctly construed the description of the land annexed as set out in the annexation ordinance. If it did, then disputed findings of fact, viz., 21 —"The Dale Realty Corporation is but one of three freeholders in the territory sought to be annexed by the borough"—and 22—"The petition requesting annexation is not signed by a majority in number of all the freeholders of the territory to be annexed"—must stand and the order declaring the illegality of the ordinance must be affirmed. "Any borough may, by ordinance, annex adjacent land situate in a township of the second class in the same or any adjoining county, upon petition. *The petition shall be signed by a majority in number of all of the freeholders of the territory to be annexed. . . .*" (Emphasis added.) Act of 1927, May 4, P. L. 519, Article IV, §425, as amended by Act of 1933, May 18, P. L. 818, §1; 1947, July 10, P. L. 1621, §5, 53 PS §12461.

The Legislature has provided that "Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions . . ., and the determination and order of the court thereon shall be conclusive. . . ." Act of 1927, May 4, P. L. 519, Article X, §1010, as amended 1933, May 18, P. L. 818, §1; 1947, July 10, P. L. 1621, §23, 53 PS §12900. But, "Notwithstanding the provision in §1010, supra, declaring the determination of the court below conclusive, the case is here on a broad certiorari and, in addition to adjudicating the jurisdiction of the court below and the

regularity of its proceedings, we examine the testimony which was made a part of the record by the Act of April 18, 1919, P. L. 72, 12 PS §1165. In Re Appeal of Bender, 106 Pa. Superior Ct. 376, 163 A. 47; Warner Bros. Theatres, Inc., v. Pottstown Borough, 164 Pa. Superior Ct. 91, 63 A. 2d 101.

"However, we do not weigh the evidence, resolve its conflicts, or pass upon the credibility of the witnesses. The findings of fact by the court below will not be disturbed if our examination of the testimony shows that they are supported by competent evidence. [Citing cases.]" *Irwin Borough Annexation Case (No. 1)*, 165 Pa. Superior Ct. 119, 122, 123, 67 A. 2d 757.

Apparently the evidence relied on by the learned court below in support of the 15th and 19th findings of fact is the language of the description itself, coupled with its representation on the map. In considering the language of the ordained description, it was incumbent upon the court to be guided in its ascertainment of the location of the disputed boundary by those well-established principles of law which govern judicial construction of descriptions of land, not the least of which is that the intention underlying the language used is the ultimate objective. "The general rules of construction applied to deeds and grants are applicable in the case of boundaries. The object of all rules for the establishment of boundaries is to ascertain the actual location of the boundary as made at the time. The important and controlling consideration, where there is a conflict as to a boundary, is the parties' intention, whether express or shown by surrounding circumstances; . . ." 11 C. J. S., Boundaries, §3, pp. 538, 539.

As heretofore noted, the 14th finding leaves no doubt as to what constituted the place of beginning. The court arrived at that finding on the theory that it was resolving an ambiguity; *but* in doing so it refused to believe the uncontradicted explanation of the Bor-

ough engineer (who made the original survey for the Realty Corporation and who prepared the original description later incorporated into the ordinance) to the effect that the references to the southerly side of the State Highway were made only to fix the defined beginning point and northerly boundary as lying south of that Highway in contradistinction to the north of it. The court, rather, followed the rule of *Weaver v. Propst,* Tex. Civ. App., 1930, 28 S. W. 2d 872, that when a description contains language which clearly points out the true corner a false statement therein as to its location must be ignored, and disregarded "the reference to the State Highway." The beginning point was thus conclusively found to be ascertainable and fixed, which was tantamount to a finding that such point was *intended* as the point of departure. That being so, the narrow question is whether it was proper for the court, in its 15th and 19th findings, to disregard the specific language "to the place of beginning," and follow the general designation "along the Southerly side of State Highway." In our judgment this was inconsistent and improper. How is it possible that the point *intended* as the place of beginning in the first call (14th finding) should not be the point *intended* by the words "place of beginning" in the last call?

The fallacy in the lower court's logic is well put in appellant's brief in language upon which we cannot improve: "The court then says '*With the agreed point of beginning at the intersection of Car Avenue and Wardan Street,* all courses and distances are properly recited in the description and designated on the map, with the exception of the final course and distance.' . . . The court, having begun by disregarding the phrase 'on the Southerly side of the State Highway,' citing authority for its decision, now embraces the phrase 'thence continuing *along* the Southerly side of the State Highway . . .' and completely disregards

the course and distance which would lead it *to the place of beginning as recited.* The court apparently felt so compelled because it said 'the language in the description is plain,—the course is "along the Southerly side of the State Highway." "Along" means "on": Church v. Meeker, 34 Conn. 421, 425.' Admitting, arguendo, that proposition of the court's to be sound, what is the ultimate result? . . . if the synonym be accepted, the last phrase means no more than the first, which is expressly worded '*on* the Southerly side of the State Highway' and that, the court agreed, meant *not* ON *the side line* thereof, BUT rather 7.22 feet therefrom 'at the intersection of the northerly side of Car Avenue and Wardan Street . . .' If the court's position be correct that in the opening phrase there was 'language which clearly points out the true corner' [*Weaver v. Propst,* supra], how could it reasonably have disregarded the equally clear language 'to the place of beginning', the true place of beginning having already been established by both engineering and judicial construction?" (Emphasis added by appellant.)

Even if the State Highway be accepted as a monument, it would still be devoid of controlling force over the course and distance to the place of beginning, for to prefer it as the boundary would result in a failure of the description to close, while to reject it in favor of the course and distance to the place of beginning would result in a closure. As was said in *Post v. Wilkes-Barre Connecting R. R. Co.,* 286 Pa. 273, 276, 133 A. 377, 378: "We fully recognize the general rule that monuments on the ground are of the highest value on questions of boundary; but that rule cannot prevail where the monument claimed is so manifestly wrong as to lead to an absurd result (Davis v. Rainsford, 17 Mass. 207; Heaton v. Hodges, 30 Am. Dec. (Me.) 731 and note 740; 4 R. C. L. 101, 102), as here, embracing the land of a third party. An alleged monument, which

is a palpable mistake, will be disregarded: Brolaskey v. McClain, 61 Pa. 146, 164." See also *Fisher v. Pittsburgh Coal Co.*, 29 Dist. 885, where the Court of Common Pleas of Westmoreland County, in a well-considered opinion by McConnell, P. J., said (p. 891): "Though some of the terms of description . . . are entitled usually to more probative value than others, yet, in the end, the true construction is ascertainable by the totality of their combined effect and not wholly and exclusively by any one term when it is irreconcilable with the other terms of description. To lay down the hard and fast rule that only monuments . . . are determinative elements of a description . . . is to make the rule contended for more important than the underlying intent of the contracting parties . . ."

In this connection it is interesting to note the testimony of both of the appellees' engineers. T. J. Halsey on cross-examination testified as follows: "Q. Now if you were the engineer in this case, Mr. Halsey, the only change you could possibly make in this description is, you would drop out the phrase, along the southerly side of the State Highway? A. Yes. Q. And if that was dropped out this would be an accurate description of the point of beginning and the point of ending? A. Absolutely. Q. In order for you to bring this . . . .15 of an acre of land within this description of the land . . . annexed by Dallas Borough, you have got to set aside the course that was fixed and the point of ending? A. Right." Then he was asked: "Q. . . . As an engineer, when you find a call that closes and you find a call that does not close, which would you follow? A. Well, we generally follow the one that closes. Q. And if you followed the one that closed . . . there would be no land of the Wilkes-Barre Railway Company included in this description? A. No."

A. M. Dilley when asked on cross-examination whether, if he ran a survey from the intersection of

Car Avenue and Wardan Street, from the iron pipe, the description would be found accurate, replied, "I would say it would be an accurate description."

The vice-president of the Wilkes-Barre Transit Corporation, called by appellees, in his cross-examination admitted that if one began at the iron pipe and followed the courses and distances in the description, no land of the Wilkes-Barre Transit Corporation would be affected.

The learned court below placed much reliance on the map showing the annexation as it affected the boundaries of the Borough, as reflected in its findings Nos. 15 and 19. In our judgment the map was not sufficient evidence for the court's 15th and 19th findings. As a general rule, if maps are referred to in a grant or conveyance they are to be regarded as incorporated into the instrument and are given considerable weight in determining the true description of the land. 11 C. J. S., Boundaries, §24. But the map in this case was not made as a graphic representation of an original survey, nor was it referred to in the description, in which event it might have been of controlling importance. The fact is that the map was submitted in compliance with statutory requirements and its value as evidence of intention as to boundary locations must be related to the demands of the statute. "A certified copy of any ordinance, adopted together with a description, and a plot showing the courses and distances of the boundaries of the borough before and after such proposed annexation, shall be filed . . ." Act of 1927, May 4, P. L. 519, Article IV, §426, as amended 1947, July 10, P. L. 1621, §5, 53 PS §12462. This statute was construed in the *Irwin Borough Case,* supra, in which we said, speaking through RENO, J., (p. 125): "The office of the description and plot is to furnish means whereby the annexed land and the boundaries of the borough can be identified. Minor discrepancies

may be disregarded, Mountainville Election District's Annexation, supra [304 Pa. 559, 156 A. 162] but the description and the plot must together definitely fix the boundaries with *reasonable certainty*. North Braddock Borough's Annexation Case, 126 Pa. Superior Ct. 53, 190 A. 357." (Emphasis added.) In *Pleasant Hills Borough Inc. Case,* 161 Pa. Superior Ct. 259, 262, 53 A. 2d 882, we said, speaking through HIRT, J.: "A petition which sets out the courses and distances, bounding the area to be incorporated, so plainly and accurately as to exclude any reasonable probability of mistake, complies with the statutory requirement of 'a particular description of the boundaries thereof, exhibiting the courses and distances in words at length': Edgeworth Borough, 25 Pa. Superior Ct. 554 [557]. . . . it is unimportant that the bearing of the highway is not indicated by reference to a common meridian or that the. plot shows the road as straight whereas in strictness it is not."

Absolute accuracy is not, therefore, mandatory. While the map in this case does not show the land of the Wilkes-Barre Transit Corporation and that of Howard Wardan as intervening between the land of the Realty Corporation and the southerly side of the State Highway, it must be recognized, as it was by the court below, that the scale of one inch to 400 feet made such a showing impossible. The land of the Transit Corporation lying between the boundary of the Realty Corporation and the State Highway was 7.22 feet at its widest point, meaning that a perfect representation, according to scale, could consume at that point less than 1/50 of an inch. A perfect representation of the land of Howard Wardan, 6 to 12 inches in width, would be confined to a space of 1/400 of an inch at the most. The reasonable certainty demanded by the statute was the object of the Borough in its preparation of the map. It was, therefore, unreasonable for the court to

rely on the map as meticulously establishing the northern boundary of the land of the Realty Corporation in support of its misconstruction of the descriptive language of the ordinance.

As to whether the description and the plot together definitely fixed the boundary with reasonable certainty, in accord with judicial construction of legislative mandate, it is our firm opinion that they did. We are not prepared to say that in this case it was essential that the details be exaggerated or notation thereof be made on the map. Hence, though the 17th finding of fact is superficially correct, in light of what we have said it does not influence the result of this case. The 17th finding reads: "The map of the borough showing the boundary after the annexation is not a correct representation of the description because the beginning point is incorrectly located on the southerly side of the State Highway."

We have applied the test as laid down in the *Irwin Borough Case*, supra, but in our judgment application of it here is to decidedly different facts which call for a different result. In that case the map was seriously in error, a line appearing on the map which had no source in the description, and for which no explanation was offered. The 18th and 19th courses did not meet by a distance of 623 feet and there was no line or course necessary to close the description. Other courses and distances did not call for any particular location but terminated at points which could have been anywhere. It was there properly held that the description and map fell short of reasonable certainty.

The order of the court below is based upon its conclusion that "The ordinance is invalid because the petition upon which it is based is not signed by a majority of the freeholders of the territory sought to be annexed," it "Being signed by but one of the three freeholders whose property is included within the de-

scription and the map . . ." The learned court then states: "This result relieves us of the necessity of passing upon the propriety of the annexation."

Order reversed and the record remitted for the purpose of having the court below consider and determine the propriety of the annexation.