## Irwin Borough Annexation Case.

Argued March 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Carroll Caruthers,* for Borough of Irwin, appellant.

*Elder W. Marshall,* with him *Louis E. Sensenich,* for Borough of Irwin School District, appellant.

*Robert W. Smith,* with him *Smith, Best & Horn, Fink & Jennings* and *Scott Fink,* for appellees.

OPINION BY DITHRICH, J., July 17, 1952:

Upon petition of a majority of the freeholders of the territory proposed to be annexed, the Borough of Irwin, Westmoreland County, on February 13, 1950, enacted an ordinance annexing a section of North Huntingdon Township, Westmoreland County, adjacent to and east of the Borough. The action was taken by authority of and pursuant to the provisions of article IV, §425, of The General Borough Act of May 4, 1927, P. L. 519, as amended by The Borough Code of July 10, 1947, P. L. 1621, 53 PS §12461.

A certified copy of the ordinance, together with the required description of boundaries, was duly filed in the Court of Quarter Sessions and one month later, to wit, March 28, 1950, a complaint was filed by the Township, the School District and six freeholders of the Township. When the matter came on for hearing August 23, 1950, the Borough moved to dismiss the complaint on the ground that the complainants had not entered into a recognizance with "sufficient security" as required by §23 of the Act, 53 PS §12900. The section provides in part that "Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs . . ." The motion

was overruled and the court proceeded with the taking of testimony. *Eo die* the Borough School District was permitted to intervene. Testimony closed August 25, 1950, and on October 10, 1950, complainants filed an amended recognizance "with the original petitioners as parties to the proceedings and Mabel L. Broker and Mary Emma Herold . . . *added as sureties.*" (Emphasis added.) On motion of counsel for complainants and over objection by counsel for the Borough and the School District of the Borough, the amended recognizance was approved and ordered filed nunc pro tunc as of March 28, 1950.

One of the questions raised on this appeal is the power of the court below to permit a recognizance to be filed more than seven months after the effective date of the ordinance. But since we are deciding this case on the merits we will not pass on the question of the sufficiency of the original recognizance, except to say that we do not agree with the learned court below that "no sureties are required in this type of case." To our way of thinking it is inconceivable that the Legislature would have required the "entering into recognizance with sufficient security" if the words "sufficient security" did not denote sufficient "sureties" in the usual and customary adaptation of the term.

On August 17, 1951, after argument before the president judge and the three associate judges of the court sitting en banc, the complaint was sustained and the ordinance decreed to be illegal and void, one judge dissenting. The Borough and the School District of the Borough have appealed. While the Township and the Borough are parties of record, the real parties in interest are the respective School Districts of the Township and the Borough.

For a clear understanding of the controversy it is necessary to go back to the proceedings in the court

below where complaint was filed by the Township and the Township School District, *but no freeholders,* to an ordinance of the Borough enacted February 20, 1948, annexing substantially the same territory. The complaint was upheld by this Court in *Irwin Borough Annexation Case (No. 1),* 165 Pa. Superior Ct. 119, 67 A. 2d 757. In the opinion of Laird, P. J., for the lower court en banc in that case, the controversy still being waged had its inception in a controversy between the two School Districts, as more clearly appears in *Irwin Borough School District v. North Huntingdon Township School District, Appellant,* 358 Pa. 78, 55 A. 2d 740. Two judges who heard the testimony being unable to agree as to the merits of the complaint, the question was placed on the court en banc's argument list and heard by three judges of the court. President Judge Laird, speaking for the majority, said: "We are of opinion that this unfortunate controversy arose as an aftermath of the deplorable dispute between the School Boards of these two School Districts, which was only settled by the decree of the Supreme Court, reported in 358 Pa. 78, and that by reason of the divorcement in that case and the subsequent property settlement, the assets of the Borough School District have become considerably increased."

The "deplorable dispute" was the outgrowth of an agreement entered into by the two School Districts to establish and maintain a joint high school on a site partly in the Borough and partly in the Township and to be known as Norwin High School. The cost of acquiring the land and erecting the building was to be shared equally and the expense of maintaining the school was to be proportioned according to the relative attendance of pupils from each district. Years later the main portion of the building was destroyed by fire and, the parties being unable to agree upon a building program, the Township School Board, by appropriate

resolution and notice to the Borough School Board, terminated the agreement; and, its action having been upheld by the Supreme Court, the Borough School District has since conducted its own high school and the Township has conducted its high school in what remained of the joint high school building following the fire. The Township School District subsequently entered into an agreement and lease with the North Huntingdon Township Municipal Authority for an addition to the high school building.

In the present proceeding the lower court said: "It is to be noted that the increase in millage for school purposes from 18 mills had its inception in the year following the establishment of a separate high school in the Borough of Irwin." And, further, "The testimony offered by the School Authorities of the Borough . . . shows nothing more than a need of the School Districts [sic] of Irwin Borough for an increased school population." The court then found as a fact "(1) That the School District of the Township of North Huntingdon will be seriously handicapped by the annexation, if approved by the State Department of Education, as the School District will lose an annual revenue of approximately $29,114.02, about 1/7th of its usual revenue, while its schools will lose only 115 students, approximately 1/18th of its total enrollment." In the light of the background as illuminated by the opinion of the lower court in the former proceeding, we are constrained to agree with the statement in the dissenting opinion by McWHERTER, J., that "In the majority opinion the question of the propriety of the annexation appears to have been weighed on the scales of the alleged proposed loss of revenue to the School District of North Huntingdon Township." And we unhesitatingly agree with him that "The question of whether the School District shall be changed and become a part of the School District of the Borough of Irwin is a matter to be de-

termined by the State Council of Education, not by this Court." As further stated by Judge McWHERTER: "Here we are confronted with the question of the propriety of the physical annexation of the territory proposed to be annexed to the Borough of Irwin. A majority of the citizens of the territory proposed to be annexed have signed the petition. Council for the Borough of Irwin has approved the petition for annexation. It is not the province of this Court to set aside the will of the petitioners and the Borough unless cogent reasons appear in the record." As this Court said in *Kistler v. Swarthmore Borough,* 134 Pa. Superior Ct. 287, 292, 4 A. 2d 244: "Courts should hesitate in declaring invalid the express will of the people of a municipality. There is much to be said in permitting residents to determine rules and regulations relating to their local affairs."

When *Irwin Borough Annexation Case (No. 1),* supra, was before us, we said (p. 134) : "Appellees have asked us to declare that the evidence shows that the school district of the township will be seriously hampered by the annexation. They contend that the district will lose annual revenue of approximately $25,-000, about one-seventh of its usual revenue, while its schools will lose only 105 students, approximately one-nineteenth of its total enrollment. . . . The court below did not discuss this point, believing that the matter was confided solely to the State Council of Education. Since the question did not enter into the decision upon the propriety of the annexation, we shall not comment upon it." The learned court below had properly said: "In any event there will be no change in the boundaries of the School District of the Borough . . . nor the boundaries of the School District of the Township . . . unless and until the annexation or the extension of the limits or boundaries of the School District of the

Borough . . . is approved by the State Council of Education."

Although we said that the loss of revenue to the School District of the Township was "a relevant factor in the exercise of the court's discretion," citing *North Braddock Borough's Annexation Case,* 126 Pa. Superior Ct. 53, 190 A. 357, we also said that "the question did not enter into the decision [of the court below] upon the propriety of the annexation"; and since a determination of that question was not essential to our decision on the appeal, the comment was dictum only. In the *North Braddock Borough Case,* supra, it was held (p. 66) that "the effect upon the School District [of North Versailles Township] was competent in the consideration of the propriety of the proposed annexation." Counsel for the Borough School District, chief of whom was the trial judge in that case, contends that it "is not applicable here. It was decided in 1937, when the only power of the State Council [of Education] was in respect to annexations which affected *school districts of the fourth class* (Act of April 24, 1929, P. L. 642, §2, as amended by the Act of May 29, 1931, P. L. 243), and the record in the case shows that the School District of North Versailles Township, the district affected, was of the *third class.* With the State Council having no power to pass upon a change in the boundary lines of a *third-class school district,* the only tribunal which could consider and protect the interests of the School District of North Versailles was the court of quarter sessions. In the instant case, however, the School Code of 1949 enables the State Council to act when the part of the township school district remaining after the separation will constitute a school district of the *third or fourth class,* and if the separation in this case should occur, the School District of North Huntingdon Township will continue to be of the third class." We agree with the learned and ex-

perienced counsel for the Borough School District.

In *Derry Township School District Appeal,* 168 Pa. Superior Ct. 415, 79 A. 2d 127, the appellant did not question the right of the court below to inquire into the effect of the ordinance on the finances of the School District. The court below, after finding that the loss of revenue to the School District would amount to only 3.2%, concluded: "From the standpoint of propriety the loss to the Township School District of 3.2% of its revenue should not defeat the will of 80% of the freeholders in the territory proposed to be annexed and the will of the people of Derry Borough as expressed through their Council." In commenting on the competency of the evidence to support the aforesaid conclusion we said (pp. 419, 420) : "It [appellant] is 'a person aggrieved', within the meaning of the Code, supra; §1010, 53 P.S. §12900, only to the extent of the powers conferred upon it and the interests confided to its care by the school laws of the Commonwealth. Thus it has no interest in the questions relating to sewage disposal unless its school buildings are directly affected. On the other hand, it does have a real and substantial interest in the alleged diminution of its tax revenue as a consequence of the annexation." Our comment should not be construed as holding that the court may set aside an ordinance because of its effect upon the future financial status of a school district of the third class, since we also said (p. 420) : "Whether the school district will actually suffer the fiscal and other disadvantages it envisages will depend, finally, upon the action of the State Council of Education, which . . . is charged with the duty of determining whether a 'change in the boundaries of an existing school district of the third or fourth class, is desirable, and whether the welfare of the pupils within the territory affected thereby will be promoted by the . . . change in the boundaries of such existing district.' The borough school district is in

the fourth class; the township is a school district of the third class; and the State Council is abundantly authorized to safeguard the interests of appellant, notwithstanding the action of the court below."

We have reviewed all the cases where the question has been touched upon by this Court and such review reveals that this is the first case since the enactment of the Public School Code of 1949 where the question of the jurisdiction of the court of quarter sessions to inquire into the prospective effect of an ordinance of annexation upon the finances of a township school district in determining propriety has been squarely raised. Accordingly, notwithstanding what we may have heretofore said by way of dictum, or otherwise, we now declare it to be our considered judgment and firm conviction that since the adoption of the Public School Code of March 10, 1949, P. L. 30, as amended by the Act of May 11, 1949, P. L. 1089, §1, 24 PS §§2-227-228, the decision as to the effect of annexation upon a school district of the third or fourth class "is exclusively committed to the State Council of Education": *Irwin Borough Annexation Case (No. 2)*, 165 Pa. Superior Ct. 134, 139, 140, 67 A. 2d 765.

Section 1010 of The Borough Code, 53 PS §12900, provides that the determination of the court of quarter sessions as to the legality of an ordinance shall be conclusive. But when the first *Irwin* case was before us we said (p. 122) : "Notwithstanding the provision in §1010, supra, declaring the determination of the court below conclusive, the case is here on a broad certiorari and, in addition to adjudicating the jurisdiction of the court below . . ., we examine the testimony which was made a part of the record by the Act of April 18, 1919, P. L. 72, 12 PS §1165. In Re Appeal of Bender, 106 Pa. Superior Ct. 376, 163 A. 47; Warner Bros. Theatres, Inc., v. Pottstown Borough, 164 Pa. Superior Ct. 91, 63 A. 2d 101."

We have been asked by the appellant School District to declare that, even if the effect of the annexation upon the appellee School District was a proper matter for consideration by the court below in determining the propriety of the ordinance, the evidence was inadequate to support the conclusion that the annexation was "ill-advised and improper." But as we said, speaking through Judge RENO in the first *Irwin* case, supra (p. 122), "we do not weigh the evidence, resolve its conflicts, or pass upon the credibility of the witnesses." But since the first finding clearly appears to have been a determining factor in the court's decision, we set it aside as an unwarranted invasion of a prerogative of, and an usurpation of a power vested by the Legislature exclusively in, the State Council of Education.

Finding 2, "That the Borough . . . is not only unwilling but unable to provide for the residents in the proposed annexed territory the improvements they seek to gain," is clearly not supported by the evidence. It is based almost solely, if not entirely, on the testimony of one member of the Borough Council who voted for the ordinance and later regretted his action, stating it "was the one and only error I made since I was a member of Council." That the court attached undue significance to his testimony is evidenced by its statement that "It is significant that William L. Hurst, a member of the Borough Council of Irwin, testified that he had talked with a number of people residing in the territory sought to be annexed, who had expressed to him that their expectations as the result of the annexation were water service, lights, sewage, street improvements, and fire protection." Although pressed to give the name of any person to whom he had talked, he refused to do so, smugly asserting that "The general expectations seem to be the people in the Penglyn Area are expecting water service, lights, sewage and street improve-

ments or repairs generally speaking." He admitted on cross-examination that when the petition for annexation was presented to Council the petitioners said they did not expect anything. His testimony as to the "general expectations" was hearsay, pure and simple, and the objection to it should have been sustained.

The only competent evidence of the improvements the residents of Penglyn presently seek are fire hydrants (referred to by the witness Hurst as water service) to provide protection against fire, police protection and additional street lights. And it appears from the testimony of the Burgess, the President and two other members of Council that the Borough is both willing and able to provide these benefits at once, without any increase in the tax millage. During the pendency of the prior annexation proceeding police protection was furnished to the territory now sought to be annexed. Notwithstanding this evidence the court found as a fact that the "Borough . . . is not only unwilling but unable to provide for the residents in the proposed annexed territory the improvements they seek to gain." Of course the learned court could and obviously did disregard the testimony of the Borough officials who testified for the appellants, but there is no competent evidence other than their testimony on the question; and since there is no competent testimony to support the finding it must be set aside.

Upon a thorough review of the entire record the conclusion is inescapable that the court below abused its discretion in finding that the Borough was "unwilling and unable to provide" for the residents in the proposed annexed territory and in decreeing the ordinance to be illegal and void because it found the proposed annexation to be "ill-advised and improper."

Decree reversed and record remanded with direction to enter a decree in accordance with this opinion; each party to bear its own costs.