190 | 315
e 33 SC | 450

# W. G. Miller, Appellant, v. G. W. Cramer and John Cure.

*Vendor and vendee—Deed—Description in deed—Marks on ground.*

The quantity of land and courses and distances in a deed must always give way to boundary lines determined by clearly established monuments, natural or artificial, existing in or on the ground.

A deed of land reserved "all that portion within the coal measures . . . . situate in the east corner." The land was described as being bounded on two sides by the lands of other owners, naming them, "and on the remaining sides by the outcrop of the conglomerate rock containing about four and one-half acres and known as the Oakley coal bed." Before the deed was executed neither vendor nor vendee knew the exact location of the outcrop of the conglomerate rock. The vendee supposed that three acres would cover the land intended to be reserved. The vendor estimated it at four and one half acres. If the outcrop of conglomerate rock was taken as the boundaries of two sides, the tract reserved covered eighteen acres. The evidence showed that the outcrop of conglomerate rock was a well defined permanent natural monument on the ground, plainly visible, with the exception of a short distance where it was covered with earth. *Held,* that the vendor and his grantees under the reservation were entitled to all the land to the outcrop of conglomerate rock.

Argued Feb. 23, 1899. Appeal, No. 38, Jan. T., 1899, by plaintiff, from judgment of C. P. Lackawanna Co., May T., 1896, No. 566, on case tried by the court without a jury. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for a tract of land in Blakely borough. Before EDWARDS, J.

The case was tried by the court without a jury.

The judge filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

1. On December 19, 1882, Ira E. Hartwell made a contract with W. G. Miller for the sale of a tract of land situate in Blakely township, Lackawanna county, containing 110 acres, reserving for himself a certain portion of the tract in the following words: "Excepting and reserving, however, out of the same all that portion within the coal measures situate in the

east corner of the above described lot, and bounded on the northeast by the Jacob Oakley lot, on the southeast by the Daniel Sherrard lot, and on the remaining sides by the outcrop of the conglomerate rock; (also a piece three rods wide from said piece to the public road on the east line); containing about four and one-half acres, and known as the ' Oakley coal bed.' "

2. The piece reserved in the Miller contract was conveyed by deed from Hartwell to Cure and Cramer, the defendants, June 2, 1888. The description in the deed is substantially the same as the description of the reservation in the contract to Miller. There being a light variation we repeat the description here.

" Bounded and described as follows, on the northeast by a tract of land conveyed by the heirs of G. M. Hollenback to Jacob Oakley, on the southeast by a tract in the warrantee name of Daniel Sherrard, and on the remaining sides by the outcropping of the conglomerate rock. Also a piece three rods wide from the above lot to the public road leading from Peckville to the old Wilkes-Barre and Dundaff turnpike, along the Daniel Sherrard line; containing about four and one-half acres, be the same more or less, and being a part of a larger piece surveyed in the warrantee name of Joseph Randall, and the same land reserved in a certain contract between the party of the first part and W. G. Miller, dated the 19th December, 1882."

3. The dispute between the parties is one of boundaries. If the plaintiff is correct in his contention, the defendants take only about four and one half acres; while the defendants claim about eighteen acres. There is no question as to the boundaries on two sides. The Oakley line and the Sherrard line are taken as correct by both parties. The difficulty touches the other lines described thus: " And on the remaining sides by the outcrop of the conglomerate rock." From the evidence we find as a matter of fact that before the Miller contract was signed, when Hartwell and Miller were on the ground, neither one knew the exact location of the outcrop of the conglomerate rock. Both knew that the outcrop of the coal measures was near by. Miller supposed that three acres would cover the land intended to be reserved. Hartwell made it four and one half acres, but was careful to state that the boundary on two sides was the outcrop of the conglomerate rock.

4. The great preponderance of the testimony shows that on a line which answers "the remaining sides" mentioned in the description, there is a well-defined and prominent ledge of conglomerate rock, which is a continuous line, plainly visible, with the exception of two or three hundred feet where it is covered by earth. An attempt was made to show a rock formation lower down on the tract but the evidence does not sustain the attempt and leaves the ledge of conglomerate rock already mentioned the only line answering the requirement of the description as the boundary of "the remaining sides."

5. After the contract between Hartwell and Miller was executed Hartwell went upon the ground and made a survey and map. This survey gave the ledge of conglomerate rock referred to as the boundary of "the remaining sides." The map was given to the defendants. This survey gives the defendants from seventeen to eighteen acres of land.

6. The description mentions the disputed piece of land as the Oakley coal bed. This was a small mining operation which had been on the ground for many years. It had no particular boundary lines, but was supposed to cover three or four acres. There is no evidence to show with any degree of certainty how far the vein of coal extended under the tract.

7. An incidental fact bearing upon the main question in the case is to be found in that part of the reservation, "also a piece three rods wide from said piece to the public road on the east line."

It is claimed by the plaintiff that if the parties intended to make the conglomerate ledge the true boundary line it was unnecessary to except this strip three rods wide because it is included within the boundaries as viewed by the defendants. Considering the uncertainty in the minds of the parties when the Miller contract was entered into, we do not deem this reservation of the three rod strip of sufficient importance to constitute a controlling element in our findings of fact.

8. Whatever uncertainty there may have been in the minds of Miller and Hartwell as to the lines or the quantity of land when the contract was made, we are satisfied from the evidence that the predominating idea was to reserve to Hartwell "all that portion of the land within the coal measures." The words quoted are a part of the description. The intention of

the parties was to adopt the outcropping of the conglomerate rock as the boundary of "the remaining sides." This outcropping is a bold line, and we cannot avoid the conclusion that the description of the reservation and the intention of the parties are in substantial accord.

### CONCLUSIONS OF LAW.

1. The quantity of land mentioned in a description is the least certain element of the description. Quantity and courses and distances, as a general rule, give way to boundaries. This is especially true when the boundaries consist of natural or artificial monuments upon the ground. The reference contained in the description of the land in dispute in this case to the Oakley coal bed, and to the quantum of four and one half acres, must be subordinate to the well-defined natural boundary described as the outcropping of the conglomerate rock. This boundary is so prominent on the ground, and is so generally understood to be the outside limit of the coal measures, that it controls the contention of the parties in the present case.

2. The defendants are entitled to judgment.

*Error assigned* among others was the judgment of the court.

*A. A. Vosburg* and *S. B. Price*, with them *Charles W. Dawson*, for appellant.—The quantity of land is a strong element of corroboration. Quantity is a circumstance of slight, often of no, weight in a question of title, but it may have a marked effect where the question is one of boundary : Kennedy v. Lubold, 88 Pa. 246 ; Deppen v. Bogar, 7 Pa. Superior Ct. 434.

It is conceded by the court that the description is ambiguous. If the parol evidence is not sufficient in law to explain the ambiguities and contradictions in the description, then the reservation is void : 2 Am. & Eng. Ency. of Law, 496 ; Walters v. Breden, 70 Pa. 238.

*W. S. Diehl*, of *Watson, Diehl & Kemmerer*, for appellees.— The description of quantity must yield to the natural and artificial monuments upon the ground. It is the boundaries to which the grantee must look. He has a right to all the land within them. The quantity is matter of calculation, and be

it more or less it passes : Large v. Penn, 6 S. & R. 488 ; Kreiter
v. Bomberger, 82 Pa. 59 ; Petts v. Gaw, 15 Pa. 218.

OPINION BY MR. CHIEF JUSTICE STERRETT, March 13, 1899 :
This action of ejectment involves the title to about fourteen
acres of land. On December 19, 1882, Ira E. Hartwell con-
tracted with the plaintiff, W. G. Miller, for the sale of a tract
of land containing 110 acres, reserving therefrom to himself a
certain portion of the tract, in the following words : " Except-
ing and reserving, however, out of the same all that portion
within the coal measures, situate in the east corner of the above
described lot, and bounded on the northeast by the Jacob Oak-
ley lot, on the southeast by the Daniel Sherrard lot, and on the
remaining sides by the outcrop of the conglomerate rock ; (also
a piece three rods wide from said piece to the public road on
the east line) ; containing about four and a half acres, and
known as the ' Oakley coal bed.' " The piece of land thus ex-
cepted and reserved in the Miller contract was afterwards con-
veyed by Hartwell to the defendants. The description in that
conveyance varies slightly from that in the reservation clause
above quoted, but the lot conveyed is referred to as " the same
land reserved in a certain contract between the party of the first
part (Hartwell) and W. G. Miller, dated the 19th December,
1882." There was no dispute as to the boundaries on the north-
east and southeast sides of the lot. The sole contention was
as to proper location of the other boundaries described by the
words, " and on the remaining sides by the outcrop of the con-
glomerate rock."

By agreement of the parties the case was tried by the court
without the aid of a jury. The facts found by the learned trial
judge are fully stated in his opinion, and need not be recited
at length here. A careful consideration of the record has satis-
fied us that there is no substantial error either in his findings
of fact or conclusions of law drawn therefrom.

Among other things he found from the evidence that when
Hartwell and Miller were on the ground, before the contract to
sell to Miller was executed, neither of them knew the exact lo-
cation of " the outcrop of the conglomerate rock." Both knew
that the outcrop of the coal measures was near by. Miller
supposed three acres would be the extent of the land to be

reserved. Hartwell estimated it at four and a half acres, but he was careful to state in his contract that the boundary on two sides of the lot reserved was "the outcrop of the conglomerate rock,"—a natural monument in the ground,—"a well-defined and prominent ledge of conglomerate rock, which is a continuous line, plainly visible with the exception of two or three hundred feet where it is covered by earth." He rightly concluded that this ledge of conglomerate rock is the only boundary that answers the requirements of the description contained in the Miller contract and in the deed to the defendants. He was also correct in his conclusion that whatever uncertainty may have been in the minds of Hartwell and Miller as to the exact location of the boundary lines on the northwesterly sides of the lot, or the quantity of land embraced therein, their primary intention was to reserve to Hartwell "all that portion of the land within the coal measures." These quoted words are a part of the description. The evident intention of the parties was to adopt the outcropping of the "conglomerate rock" as the boundary of "the remaining sides."

While the quantity of land (four and one half acres), stated in the description, is entitled to some consideration, it is the most uncertain element in the description. As a general rule, —to which this case is no exception,—quantity, courses and distances must always give way to boundary lines determined by clearly established monuments, natural or artificial, existing on or in the ground, such as the outcropping of "the conglomerate rock," called for as the boundary of "the remaining sides." According to the evidence, that ledge is so prominent, and so generally understood to be the outside of "the coal measures," that it ought to be a controlling factor in determining the question under consideration in favor of the defendants.

It is unnecessary to discuss any of the specifications of error in detail. We find nothing in the record that would justify us in sustaining either of them; and they are therefore all overruled.

Judgment affirmed.