## Newcomer, Admin'x, et al. v. South Fayette Coke Company

D. M. Hertzog and Frank Newcomer, for plaintiffs.

Dean D. Sturgis and Robinson & Robinson, for defendant.

HENDERSON, J., February 23, 1932.—This is an action of trespass to recover damages for the alleged unlawful mining of certain coal lying between the actual coal crop line and the boundary line as described by courses and distances in a deed conveying the main body of the coal. An affidavit of defense was filed, alleging that the plaintiff was not the owner of the coal. The trial resulted in a verdict in favor of the plaintiff for the sum of $14,282.48. A motion for judgment for defendant n. o. v. and one for a new trial was filed, which motions are now before the court.

Prior to July 10, 1899, Samuel D. Newcomer was the owner of a tract of land in German Township, by purchase from David Newcomer by deed dated

March 19, 1886, containing 68 acres and 153 perches, approximately 45 acres of which was underlaid with the Pittsburgh or nine-foot vein of coal, which coal outcropped on the land and was in two parcels or tracts. By deed dated July 10, 1899, Samuel D. Newcomer and wife, for the consideration of $6183.45, conveyed to Charles H. Foote all the nine-foot vein of coal underlying all those two certain tracts of land situate in German Township, Fayette County, Pa., bounded and described as follows:

"Beginning at a point on line of land of Samuel Frets and coal crop line; thence by coal crop line East 378.07 feet and by same North 44 deg. 40 min. East, 144.70 feet, and North 2 deg. 53 min. East, 192.70 feet and North 60 deg. 53 min. East, 315.75 feet and South 49 deg. 54 min. East, 214.60 feet; and South 14 deg. 4 min. East, 508.70 feet to point on line of coal reserved by said first parties; thence by said reservation, North 51 deg. 36 min. East, 181.90 feet and South 38 deg. 24 min. East, 239.50 feet and South 51 deg. 36 min. West, 181.90 feet to coal crop line; thence by said coal crop line South 77 deg. 34 min. East, 211.60 feet and by same North 51 deg. 9 min. East, 150.35 feet and North 2 deg. 29 min. West, 341.65 feet; and North 41 deg. 46 min. East, 130.60 feet and North 81 deg. 22 min. East, 403 feet; thence by line of other land North 12 deg. 21 min. East, 42.07 feet to coal crop line; thence by said coal crop line North 25 deg. 1 min. West, 451.95 feet; and North 6 deg. 6 min. East, 174.85 feet and North 58 deg. 30 min. East, 6.80 feet to line of land of John Newcomer; thence by the latter North 73 deg. West, 1656.90 feet to line of land of Samuel Frets; thence by the latter South 10 deg. 57 min. West, 1312.01 feet to coal crop line, the place of beginning.

"Excepting and reserving, however, thereout and therefrom, the coal underlying two pieces of the above described land upon which buildings are erected, designated 'A' and 'B' and bounded and described as follows:

" 'A'—Beginning at a point North 20 deg. 46 min. West, 74.75 feet distant from the end of the first line mentioned in the above described tract, bearing East 378.07 feet, thence North 60 deg. West, 104.35 feet and North 30 deg. East, 104.35 feet, and South 60 deg. East, 104.35 feet and South 30 deg. West, 104.35 feet to the place of beginning.

" 'B'—Beginning at a point North 31 deg. 46 min. West, 96.38 feet distant from a point on the coal crop line at the end of line bearing North 2 deg. 53 min. East, 192.70 feet; thence North 60 deg. West, 104.35 feet and North 30 deg. East, 104.35 feet and South 60 deg. East, 104.35 feet and South 30 deg. West, 104.35 feet to the place of beginning, said larger described tract contains a net area of 39.766 acres, exclusive of reservations.

"Second.—Beginning at a point, corner of land of Samuel Frets and Daniel Hostetler; thence by land of the latter, South 84 deg. 5 min. East, 330.76 feet to coal crop line; thence by said coal crop line, North 45 deg. 52 min. West, 122.10 feet and by same North 82 deg. 43 min. West, 66.8 feet and North 9 deg. 3 min. East, 120.50 feet and North 18 deg. 3 min. West, 315.17 feet to line of land of Samuel Frets; thence by the latter South 10 deg. 57 min. West, 494.40 feet to the place of beginning, containing 1.457 acres."

This deed recites that the premises conveyed are a part of the same conveyed to Samuel D. Newcomer by David Newcomer by deed dated March 19, 1886.

The said two tracts of coal outcrop, and between the lines as given in this deed as the crop lines and the actual outcrop of the coal on the surface, are an irregular strip of crop coal which is referred to in the testimony by sections as "A," "B" and "C." This strip of coal is the subject of the present litigation.

On January 19, 1904, said Samuel D. Newcomer and wife executed and delivered to William A. Riffle a deed by which they conveyed "all that certain tract

of land situate in German Township, Fayette County, Pa., bounded and described as follows:

"Beginning at a stone and running thence by land of Daniel F. Hostetler, South 85 deg. East, 23.6 perches to a stone; thence by same North 69¼ deg. East, 39.6 perches to a stone; thence by same South 79¼ deg. East, 59.1 perches to a stone; thence by land of John Coffman North 11¼ deg. East, 81.1 perches to a stone; thence by land of John Newcomer, North 71¼ deg. West, 119.4 perches to a stone; thence by land of Samuel Frets South 10½ deg. West, 116.3 perches to the place of beginning, containing 68 acres, 153 perches, more or less.

"Excepting and reserving, however, therefrom and thereout of all the coal within and underlying the said described tract of land, together with the right to mine, extract, etc. [Here follow the same mining rights as in the Foote deed.]

"Excepting, however, from said exception and reservation of coal about one acre under and around mansion house and buildings, and about another acre at or near the mouth of the coal mine or bank now open which said two acres of coal, more or less, are hereby conveyed.

"The said party of the second part, his heirs and assigns are to have the right to bore or drill through said coal for oil and gas at any time.

"The above rights and privileges being those and the same which were conveyed to Charles H. Foote by deed dated July 10, 1899, and recorded in Deed Book 169, page 222."

This deed recites that the tract here described is the same which was conveyed to Samuel D. Newcomer by David Newcomer by deed dated March 19, 1886.

For convenience, we shall refer to the deed first above mentioned as the Foote deed and the one second above mentioned as the Riffle deed. By subsequent conveyances the title to the premises conveyed to William A. Riffle became vested in the defendant company. Adjoining the Newcomer tract on the west was a tract of land known as the Frets farm, also underlaid with coal, the title to which became vested in the defendant company, which company later mined the coal under the Frets farm and also mined and removed certain portions of the outcrop coal which lay outside of the courses and distances mentioned in the Foote deed and within the boundary lines of the Riffle deed, being the narrow, irregular strip of outcrop coal before mentioned. The plaintiff then brought the present suit, which resulted in the verdict before stated. The defense at the trial was that the deed from Newcomer to Foote conveyed all the nine-foot vein of coal to the actual crop line; that where it calls in the deed "thence by coal crop line . . ." it intended a conveyance of all the coal to the actual outcrop line and not just the coal lying within the courses and distances in the deed; that the actual coal crop line was to be the boundary line, and that, therefore, plaintiff had no title to the coal in question. It was also contended that if the said strip of outcrop coal was not conveyed by the Foote deed, it was conveyed by the Riffle deed, and, therefore, the defendant had title to the coal in question. The trial court held differently.

In support of the motions it is urged, since the calls in the Foote deed are by courses and distances to the "coal crop line" and "thence by the said coal crop line" by courses and distances, that there was thereby constituted a monument upon the ground which controlled, since the calls in the deed and the actual coal crop line or outcrop of the coal were different; that the calls in the deed yield to the actual outcrop line of the coal; and that all the coal underlying the premises described in the Foote deed to the actual coal crop line was conveyed. It is contended that the coal crop line of the coal is a monument on the ground, called for in the deed, and since it differs from the line of the outcrop as given by the courses and distances in the deed, the monument controls, citing Pringle v.

Rogers, 193 Pa. 94, Miles Land Co. v. Hudson Coal Co., 246 Pa. 11, Muia v. Herskovitz, 283 Pa. 163, Myer v. Curry, 291 Pa. 145, and other cases. Attention is also called to the case of Miller v. Cramer, 190 Pa. 315, in which it was held that the courses and distances must give way to a well-defined natural boundary described as the "outcropping of the conglomerated rock," which was prominent on the ground and generally understood as the outside limit of the coal measures, and also to the case of Hutchison v. Little Four Oil and Gas Co. et al., 275 Pa. 380. We have examined these cases with care and are of the opinion that they are not controlling in this case.

There were two separate tracts of coal conveyed in the Foote deed, one containing a net area of 39.766 acres and the other a net area of 1.457 acres, or a combined area of 41.223 acres. The consideration stated in the deed is $6183.45, which equals a consideration of $150 per acre for the coal. The two tracts of coal were in close proximity to each other. Mr. Gans, an engineer called on behalf of the plaintiff, testified that there was mined, outside of the lines called for in the smaller tract, 0.2857 acres of coal along the outcrop, which is referred to on the plot exhibited and in the testimony as "A," and that on the larger tract of coal there were mined outside of the lines called for in the deed 2.1016 acres of outcrop coal, designated on the map as sections "B" and "C," making the total area mined outside of the lines called for in the courses and distances 2.3873 acres. The coal conveyed in the Foote deed was coal which along certain sides or boundaries had what we know as an "outcrop." It is well known that the coal along an outcrop of a body of coal is not as valuable as the coal which has a deeper covering over it; sometimes it is soft and of a reddish color and is usually less marketable. Because of this fact, the parties in making a conveyance of coal of this character usually define what is to be the outcrop line, and that depends upon the agreements of the parties at the time. Sometimes the coal is conveyed to one crop line, sometimes to another; sometimes to the actual crop line or edge where the coal and surface meet and it is visible on the ground; sometimes it will be a ten-foot covering of soil, or to a ten-foot outcrop line, and sometimes to another depth or covering. This has been the custom in our county in conveying coal which outcrops, and we believe it is the custom which generally prevails. There must be some point in the conveyance where the coal which outcrops is to be cut off, as it were, from the main body of the coal, and when the parties to the contract define this excising line or crop line, which they adopt by courses and distances, it is the line to govern, and the coal outside of that line is not considered as being within the grant. A coal crop line is subject to many variations, depending upon the agreements of the parties, and unless it is shown that it is at a point where the coal actually and visibly crops out on the surface, it could not be said to be a monument on the ground of much, if any, controlling effect. It is not in the same class of monuments as fixed objects, such as a tree, stone, creek, ledge of rocks, etc. In this case it is conceded that the courses in the Foote deed do not run to the actual outcrop of the coal on the ground. At some places the lines in the deed are beyond the actual outcrop line of the coal, but at most places they are within the actual outcrop lines of the coal. The call in the deed "to the coal crop line" should be treated as surplusage; the subject matter conveyed is found within the courses and distances in the deed, as is further evidenced by the plot made a part of the deed. In the case of Fisher v. Pittsburgh Coal Co., 29 Dist. R. 885, President Judge McConnell discusses the question of monuments on the ground in connection with "an outcrop" of coal, and so well expresses our thought on the matter that we quote in support of our conclusion the following paragraphs from that opinion:

"If there was a visible rock, tree, building or other fixed and visible or otherwise well-defined object with a definite and permanently fixed location, and a vendor or vendee were seeking to locate for the purpose of conveyance a line that would fall wholly within the vendor's own land (for in this case there are on this line no other called-for adjoiners) and such negotiating parties could, for the purpose of description of the subject matter of their contract, utilize such a monument to define the location of such a line of severance, and did actually mention it for that purpose in the deed, it would be there entitled to control over courses and distances and computed area—for the contracting parties are least liable to have made a mistake in regard thereto, and with respect thereto are presumably less subject to the errors of others in regard to the other terms of description which may have been employed in the deed.

"But in regard to the location of an 'outcrop'—unless that be at a point where the coal actually and visibly 'crops out'—there is less certainty and less definiteness of intended location than is usually ascribed to ordinary visible monuments, natural or artificial. Contracting parties are more liable to error and mutual misunderstanding with respect to the location of things that are invisible, and hence are less likely to employ such things as descriptive monuments in defining their intention with respect to what shall constitute the subject matter of conveyance than they are with respect to the use, for that purpose, of things having a location that is fixed and visible on the surface. . . .

"It may not, as a rule, be safe to hold parties to the accuracy of lexicographers in the use of the words which they have employed in expressing their contracts; but, construing their contracts when made, it is not a vice in construction to bear in mind how the lexicographers have defined some of the words employed in the agreement. In the Standard Dictionary we find this definition of the word 'outcrop:' 'The appearing at the surface of a stratum, or series of strata, or of a vein, or ore-deposit of any kind.' The same word, when used as a verb, is also thus defined: 'To crop out or up; specifically, in geology, to come out to the surface of the ground; said of a strata.'

"In that sense of the word 'outcrop' neither of the parties claims to employ it in defining what they respectively claim. When coal is bought and sold for mining purposes it is a well-known mode of procedure for the contracting parties to excise from the main body of the coal, which is the intended subject matter of conveyance, the red—or less merchantable coal which lies nearest to the points where erosion has carried a portion of the seam away, and that portion which is thus excised is conveniently denominated 'outcrop,' or 'crop coal.' Where the conventional line of severance to be run is fixed only by agreement, and, when run, it may, in exceptional cases, throw a considerable body of minable, although inferior, coal into the portion of the bed conveniently called 'outcrop' coal; but, wherever the parties by their convention see fit to locate this excising line, it is not to be legally controverted that the coal—whatever its quality may be—that is located outside of this excising line remains the property of the original owner of the seam, and only that part thereof that lies within the boundaries so fixed passes in title to the vendee by the deed of conveyance, and that alone is intended to be paid for by the vendee."

If we adopt the contention of the defendant we would have to ignore the courses and distances given in the deed along the boundaries where the coal outcrops and adopt a line which evidently the parties themselves did not adopt. If we were to do this we would add to the area of the coal conveyed approximately 2½ acres, for which the grantors received no consideration; and while the area is not controlling in matters of description, it is a matter which is entitled to some probative value, especially in cases of this class where the question

is one of boundary: Kennedy et ux. *v.* Lubold, 88 Pa. 246. A computation of the actual area within the boundary lines of the Foote deed at $150 per acre, which was a good price per acre for coal at that time, equals the consideration stated in the deed. We are of the opinion that the calls in the deed "to the coal crop line" is not to a fixed monument, and that the rule that fixed monuments are to prevail over courses and distances in fixing the boundaries of land is not applicable to the case at bar.

The second contention of defendant in support of its motions is that if it be held that the strip of outcrop coal mined was not conveyed by the Foote deed, it was conveyed by the Riffle deed, and, therefore, the defendant had title to the coal mined. We do not accede to this proposition. The deed to Riffle conveyed "all that certain tract of land . . . containing 63 acres and 153 perches, more or less. Excepting and reserving, however, therefrom and thereout of all the coal within and underlying the said described tract of land, together with the right to mine, extract, etc. [Here follow the same mining rights as in the Foote deed, supra.]

"Excepting, however, from said exception and reservation of coal about one acre under and around the mansion house and buildings and about another acre at or near the mouth of the coal mine or bank now open, which said two acres of coal, more or less, are hereby conveyed. . . . The above rights and privileges being those and the same which were conveyed to Charles H. Foote by deed dated July 10, 1899, and recorded in Deed Book 169, page 222."

The contention of the defendant is that by this deed Newcomer conveyed everything except the coal and mining rights sold to Foote, but the reservation clause is that "all the coal" is reserved, and that would include the coal along the crop line outside of the courses and distances in the Foote deed. The recital, "above rights and privileges being those and the same which were conveyed to Charles H. Foote," does not refer to all the coal, but to the coal actually conveyed in the Foote deed. It may be that, after the conveyance to Riffle, Newcomer did not have mining rights to the strip of coal known as the "outcrop coal" and the subject of this suit, but we are of the opinion that under the Riffle deed the grantors still retained the title to the strip of outcrop coal.

The third reason urged in support of the motions of defendant is that the burden of proof is on the plaintiff to prove the amount of coal taken and the fair market value at the time taken, and that the plaintiff, under the testimony here, has not met this burden. The testimony is to the effect that a part of the coal had been mined prior to the years 1917 and 1918, but the record is silent as to the quantity mined before these dates, nor does it show the amount mined in 1917 or 1918. Under the testimony of Mr. Sangston it would appear that the mining of coal under areas "A," "B" and "C," referred to in the evidence, during the years 1917 and 1918, consisted mostly in the ribs and stumps. No testimony goes to show the quantity of coal mined in any particular year or time. The testimony shows also that the coal had a value on a royalty basis, being in close proximity to mining operations. The witnesses who were called to give testimony as to the value of coal on a royalty basis confined their testimony to the years 1917 and 1918. All members of the court have carefully read the testimony in this case, and we are of the conclusion that the jury could not have done other than speculate as to the quantity of coal mined prior to 1917 or 1918, and also as to its value, as well as speculate as to the quantity mined in 1917 and 1918. The verdict evidently was based upon the total tonnage mined in the areas in question as given by the figures of Mr. Gans at forty cents per ton. There was no testimony to establish the fair market value of the coal at the time taken; neither was there any testimony to establish the amount of coal

taken in 1917 and 1918, to which the testimony as to the value then would be applicable. A verdict based upon such testimony is without proof to sustain it.

We, therefore, will sustain the motion of defendant for a new trial and refuse the motion for judgment for the defendant n. o. v., inasmuch as we hold that the title to the coal in question was in plaintiff, and accordingly grant a new trial.