551 A.2d 302

**R. Carl PENCIL and Annabel L. Pencil, his wife**

v.

**Lester L. BUCHART and Elaine L. Buchart, his wife, Appellants.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1988.

Filed Dec. 7, 1988.

---

W. David Slomski, Pittsburgh, for appellants.

John B. Koontz, Bedford, for appellees.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

HESTER, Judge:

Appellants, Lester L. Buchart, and his wife Elaine L. Buchart, appeal from the judgment entered by the Court of Common Pleas of Bedford County on March 31, 1988, wherein the court found that title to disputed real property was in appellees, R. Carl Pencil, and his wife Annabel L. Pencil.

The Bucharts and the Pencils are owners of adjoining tracts of land. The exact location of the boundary line dividing their properties is the issue involved in this appeal. The common source of title of the two properties was Adam and Catherine Samuels, who originally owned an undivided parcel of land encompassing both properties. The property

now owned by the Bucharts was the first portion of the Samuels' land to be conveyed.

On February 28, 1867, the Samuels transferred what is now the Buchart property to Jacob W. Miller. The deed, which was recorded in Bedford County Deed Book AN at page 383, on March 13, 1867, specifically described the conveyance with reference to metes and bounds as follows:

Also one other tract of timber land situated in St. Clair Township, County and state aforesaid. Containing thirty-one acres to be cut off of the following described tract of land on a parallel with the line North nine and one-half degrees West one hundred fifty eight perches or on a parallel with the line separating this tract from lands of Daniel Walters the whole of which tract of land is described as follows:

Beginning at a stone corner thence South 88¼ degrees East 56.4 perches to a post; thence by lands of John Zimmers, South 13½ degrees East 146.7 perches to stones; thence South 52¼ degrees West 59.7 perches to stones; thence North 35½ degrees West 30 perches to stones; thence North 9½ degrees West 158 perches to the place of Beginning, the part conveyed to the taken from the end next to Walters' land....[1]

On April 1, 1874, Jacob Miller conveyed this property to Benjamin Troutman. The deed was recorded on June 4, 1874, in deed Book AY, at page 76. The tract therein conveyed was described as 31 acres, to be cut off from a larger tract of timberland described by metes and bounds.

Troutman conveyed title to this tract to Albert E. Smith by deed dated March 18, 1911. The tract therein conveyed was described as 31 acres, to be cut off from a larger tract of timber land described by metes and bounds.

On April 21, 1911, George W. Blackburn surveyed an adjacent tract owned by George Bush. The survey indicated distances along the southern boundaries of the Smith tract and the Zimmers (now Pencil) tract and showed the

---

1. A "perch" is a unit for measuring distance equal to sixteen and one-half feet. Blacks Law Dictionary.

southern corner of the dividing line between the two tracts. No monument was indicated on the survey of the location of the dividing line.

Albert Smith died testate, April 29, 1946. His heirs conveyed title to this tract to Austin L. Smith and Bertha Smith, his wife, by deed dated August, 1947. The tract therein conveyed was described by joinder only as containing 31 acres, more or less.

On November 22, 1977, Norman Van Why surveyed this tract. His survey showed the tract as containing 40.29 acres. Smith conveyed title to this tract to Bucharts, appellants, on April 27, 1978. The tract conveyed was described as follows:

> Beginning at a stone corner, in common with lands now or formerly of Joseph H. Shannon and Paul Wagner; thence North 26 degrees 46' West 500.97 feet to a stone; thence by land now or formerly of May Beth King, and then Eleanor J. Green and Paul Geisler, crossing over stones and witness trees at 445.03 feet to an iron pin in stones; thence by lands now or formerly of Miriam S. Beckner, and then by lands of the Joseph W. Tate estate, crossing over a stone corner at 259.31 feet, South 80 degrees 45' 40" East 614.56 feet to a stone corner, thence by lands now or formerly of Carl R. Pencil South 0 degrees 20' 10" East 2,738.78 feet to an iron pin and stone; thence by lands now or formerly of Joseph H. Shannon South 61 degrees 18' 15" West 452.78 feet to a stone corner, the place of BEGINNING. Containing 40.-29 acres according to a survey by Norman S. Van Why, R.S., dated November 22, 1977.

This is the first conveyance in appellants' chain of title wherein the land conveyed is not referred to as containing 31 acres.

Appellees, Pencils', chain of title to their property is as follows. Samuels conveyed what is now the Pencil property to Zimmers on February 26, 1889; and it was described as follows:

All the following described piece, parcel or tract of land, situate and lying in the Township of Bedford, County of Bedford, and State of Pennsylvania, being a tract of mountain land and containing about thirty-two acres more or less adjoining lands of Benjamin Troutman on the Northwest, John Zimmers on the Southeast, A.J. Crissman's heirs on the South and others.

In February, 1900, there was a conveyance between members of the Zimmers family wherein the tract conveyed was described by joinder only as containing 32 acres, more or less. Pencils, appellees, purchased the tract from the Zimmers' heirs July 26, 1976. In each of the conveyances, the property was described, as in the deed out of Samuels, by reference to adjoining lands only and as containing 32 acres more or less.

Appellees then commissioned Norman Van Why to survey their property. He utilized public records and an old survey of adjoining lands prepared in 1911 (Blackburn Survey). The results of the survey indicated that appellees owned only twenty-four acres rather than the thirty-two acres set forth in the deed conveying title into them. Similarly, the survey indicated that appellant's predecessors in title, the Smiths, as set forth above, owned forty acres rather than the thirty-one acres stated in the 1867 deed out of Samuels to their predecessors in title. The Smiths sold to appellants, who recorded a deed purporting to convey forty acres.

The Van Why surveys did not locate any document of record to indicate that a survey had ever been performed previously to determine specifically the location of the property line now in dispute. Nothing of record indicates that the conveyances of the land in the Samuels' deeds had ever been surveyed and monumented.

Appellees instituted an action to quiet title requesting 1) that title to the disputed property be found to be vested in them; and 2) that the Bedford County Recorder of Deeds cancel appellants' deed from Smith insofar as it was inconsistent with their claim of title to the disputed property. In response, appellants requested an order re-establishing

their title to the land as described in their recorded deed consistent with the survey prepared by Van Why. The court found in favor of appellees. Appellants filed a motion for post-trial relief requesting judgment n.o.v. or, in the alternative, a new trial. The motion was denied. This timely appeal followed.

Appellants raise the following issues:

1. Did the trial court err in refusing to grant the defendants' motion for post-trial relief?

2. Did the trial court err in disregarding the survey of George W. Blackburn, the Motto Deed, and the Smith Agreement?

3. Did the trial court err in failing to apply the standards of surveying practice recognized by judicial decision?

4. Whether the trial court's determination of the boundary line between the properties is not supported by the evidence?

5. Did the trial court err in rejecting the rule of law that monuments prevail over quantity of land?

Appellants argue that the trial court erred in rejecting the Van Why Survey because, in so doing, the court rejected the rule that monuments on the ground prevail over acreage in a deed in resolving a boundary dispute. Appellants also assert that the trial court's determination of the boundary line is contrary to the evidence and based upon its rejection of an ancient survey. Thus, appellants argue they are entitled to judgment n.o.v. or a new trial.

In reviewing a denial of a motion for judgment n.o.v., the evidence and all reasonable inferences therefrom must be considered in the light most favorable to the verdict winner. *Aiello v. Ed Saxe Real Estate, Inc.*, 327 Pa.Super. 429, 435, 476 A.2d 27, 29 (1984) (revised on other grounds). A judgment n.o.v. should be entered only in clear cases, and all doubt should be resolved in favor of the verdict winner. A motion for judgment n.o.v. can properly be granted only "when no two reasonable minds could differ that as a

matter of law, the party failed to make out his case." (Citations omitted). *Elder v. Orluck,* 334 Pa.Super. 329, 483 A.2d 474 (1984).

> It is well settled that in reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, we must view the evidence in a light most favorable to the verdict winner, resolving all doubts in his favor and giving him the benefit of every reasonable inference arising from the evidence. *Feld v. Merriam,* 314 Pa.Super. 414, 461 A.2d 225 (1983); *McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. 438, 450 A.2d 991 (1982). It is also well settled that judgment notwithstanding the verdict may only be granted in a clear case when the factors are such that no two reasonable men could fail to agree that the verdict was improper. *Walsh v. Pennsylvania Gas & Water Co.,* 303 Pa.Super. 52, 449 A.2d 573 (1982).

*Id.,* 334 Pa.Super. at 339, 483 A.2d at 479.

In reviewing the grant or denial of a new trial, an appellate court is limited to consideration of whether the trial court abused its discretion. *See Thompson v. City of Philadelphia,* 507 Pa. 592, 598, 493 A.2d 669, 673 (1985). We find no error or abuse of discretion in the trial court's denial of appellants' request for a judgment n.o.v. or a new trial as the evidence supports the trial court's decision. *Minteer v. Wolfe,* 300 Pa.Super. 234, 446 A.2d 316 (1982).

We recognize that the findings of the trial court will not be disturbed on appeal absent a clear abuse of discretion or error of law. *See Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981). It is equally axiomatic, however, that this court is not bound by the trial court's conclusions of law but is free to draw its own inferences and conclusions from the facts as established. *First Pennsylvania Banking and Trust Co. v. Liberati,* 282 Pa.Super. 198, 422 A.2d 1074 (1980).

█ Initially, we note that the primary function of the trial court resolving a boundary dispute is to ascertain the intent of the grantor at the time of the original subdivision.

*Roth v. Halberstadt* 258 Pa.Super. 401, 392 A.2d 855 (1978). To achieve this result, our courts have employed certain rules of construction that are commonly thought to provide the best indication of that intent. It is beyond dispute that Samuels intended to convey 31 acres by their deed to the tract now owned by appellants, and intended to convey 32 acres, more or less, by their deed to the tract now owned by appellees.

As a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail. Moreover, natural monuments [2] normally take preference over artificial marks or monuments. *Appeals of Borough of Dallas,* 169 Pa.Super. 129, 82 A.2d 676 (1951). These rules, however, are not imperative but are aids in construction that must yield to a contrary showing. *Baker v. Roslyn Swim Club,* 206 Pa.Super. 192, 213 A.2d 145 (1965).

In *Post et al. v. Wilkes-Barre Connecting R.R. Co.,* 286 Pa. 273, 276, 133 A. 377, 378 (1926), it was stated:

We fully recognized the general rule that monuments on the ground are of the highest value on questions of boundary, but that rule cannot prevail where the monument claimed is so manifestly wrong as to lead to an absurd result (*Davis v. Rainsford,* 17 Mass. 207; *Heaton v. Hodges,* 14 Me. 66, 30 Am.Dec. (Me.) 731 and note 740; 4 R.C.L. 101, 102), as here, embracing the land of a third party. An alleged monument, which is a palpable mistake, will be disregarded. *Brolaskey v. McClain,* 61 Pa. 146, 164. See, also, *Malone et al. v. Sallada* et al., 48 Pa. 419. Where the monuments are doubtful, a resort will be had to the courses, distances and quantity. See *White et al. v. Luning,* 93 U.S. 514 23 L.Ed. 938; *Robinson v.*

---

**2.** Monuments are visible markers or indications left on natural or other objects indicating the line of a survey. *Grier v. Pennsylvania Coal Co.,* 128 Pa. 79, 18 A. 480 (1889). "[N]atural objects, such as the bank of a stream, the shore of a lake, a precipice or ledge or rocks, a fountain or spring of water, may be adopted ... as ... monuments fixing the location of lines and corners." *Id.,* 128 Pa. at 95–96, 18 A. at 482 (emphasis added).

*Doss,* 53 Texas 496; *Western Mining, etc., Co. v. Peytona Cannel Coal Co.,* 8 W.Va. 406.

In *Appeals of Borough of Dallas, supra,* this court stated:

> Though some of the terms of description ... are entitled usually to more probative value than others, yet, in the end, the true construction is ascertainable by the totality of their combined effect and not wholly and exclusively by any one term when it is irreconcilable with the other terms of description. To lay down the hard and fast rule that only monuments ... are determinative elements of a description ... is to make the rule contended for more important than the underlying intent of the contracting parties....

*Id.,* 169 Pa.Super. at 137, 82 A.2d at 680.

"This rule is not an imperative and exclusive one, but is a rule of construction to ascertain, or to aid in determining the intention of the parties; and it is not followed where strict adherence to the call for a monument would lead to a construction plainly inconsistent with such intention." 11 C.J.S. Boundaries Section 51. Thus, the rule does not apply "where the monument claimed is so manifestly wrong as to lead to an absurd result." *Post et al. v. Wilkes–Barre Con. R.R. Co.,* 286 Pa. 273, 276, 133 A. 377, 378 (1926). Nor does it apply "to a call for a monument which is false or mistaken, or to monuments not mentioned in a deed" unless "said monuments are afterward erected by the parties with intent to conform to the deed." 11 C.J.S. § 51. "Where the monuments are doubtful, a resort will be had to the courses, distances and quantity." *Post et al v. Wilkes–Barre, supra,* 286 Pa. at 276, 133 A. at 378, *See also Baker v. Roslyn Swim Club, supra.*

■ As the trial court pointed out, "The deeds in the defendants' [appellants'] chain of title have, with the exception of the deed of April 27, 1978, always described the defendants' tract as containing 31 acres. Likewise the deeds in the plaintiffs' [appellees'] chain of title have always described the plaintiffs' [appellees'] tract as containing 32

acres, more or less. With the exception of the deed of April 27, 1978, none of the deeds in either chain of title makes reference to any monuments, nor was any evidence presented at trial showing that any monuments were erected by either of the parties or their predecessors with intent to conform to the deed. The defendants' [appellants] claim to a tract containing 40.29 acres would seem to be the type of 'absurd result' which the *Post* court wished to avoid." Trial court opinion, 2/1/87, at 7. We agree.

■ "Evidence of the acreage of land, especially where the number of acres is followed by the words 'more or less', has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate. Where, however, a doubt exists as to the actual location of the boundary and the writing contains no words to definitely fix the line by either metes and bounds or monuments on the ground, evidence of the acreage becomes a material factor in the determination of the intention of the parties...." *Dawson v. Coulter*, 262 Pa. 566, 570, 106 A. 187, 188 (1919). Before a physical monument is accepted as a boundary line, there must be evidence other than its mere existence that the monument was intended for that purpose and at no point were the stones used by Van Why to mark the southeast boundary ever mentioned in any deed in other chains of title. Nor is there any evidence that any past parties erected it as a monument to mark the boundary.

The cases relied upon by appellants are not dispositive of the instant issue. While these cases follow the general rule that "where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail," they are distinguishable on their facts. These cases involved conflicts between acreage or courses and distances and monuments recognized or described in the deed. In *Roth v. Halberstadt*, 258 Pa.Super. 401, 404, 392 A.2d 855, 856 (1978), the deed referred to a line "passing in a spring". *Miller v. Cramer*, 190 Pa. 315, 316, 42 A. 690 (1899), described a tract as being bounded "on the remaining sides by the outcrop of the conglomerate

rock", which the court determined could be clearly located. *Albert v. Schenley Auto Sales*, 375 Pa. 512, 516, 100 A.2d 605, 607 (1953), involved a boundary marked by "surveyor's pegs, a pole and an old stationary truck" which the Court found had been pointed out to the purchaser prior to the time that he entered into an agreement of sale.

These cases differ from the instant case in that the deeds herein do not refer to monuments, and there is no evidence of monuments ever being established or consented to by the parties or their predecessors in title. The trial court did not err in looking at the acreage conveyed in the deeds and conforming the conveyances to carry-out the obvious intent of the original grantors.

Appellants argue that the trial court erred in disregarding the following three documents admitted into evidence: 1) a survey prepared and dated April 21, 1911; 2) a right-of-way agreement between Hazel K. Smith and Austin L. Smith, et ux., dated April 8, 1978; and 3) a deed from Genevieve M. Motto, et ux., et al. to Joseph H. Shannon, et ux., dated October 2, 1961.

It is within the discretion of the trial judge to reject the map or plat if, in his judgment, it adds nothing by way of illustration to the witness' testimony. We note that appellants did not challenge the trial court's treatment of the Motto Deed and the 1978 Smith Agreement in their post-trial motions. As such, they are waived and will not be reviewed here. *See* Pa.R.C.P. 227.1. *See also Hanik v. Pennsylvania Power Co.*, 308 Pa.Super. 352, 454 A.2d 572 (1982) (matters not addressed in exceptions are deemed waived).

With regard to the Blackburn Survey, the record reveals that the survey was not of the disputed properties but rather of adjoining property south of the Pencil and Buchart tracts. While Van Why utilized the Blackburn survey as the basis for fixing the southern point of his division line, he testified that there was no evidence that Blackburn surveyed the tracts in dispute nor does that survey show any monuments having been located at the purported divi-

sion line. Furthermore, upon review of a retracement survey utilizing the Blackburn survey made by a Mr. Cunard in 1944, Van Why could find no evidence that Mr. Cunard established any point at the division line. There was no evidence to indicate that a survey to determine the division line was ever made; nor was there anything of record to indicate that the area described in the deed was ever surveyed and monumented. Appellants claim the court abused its discretion by disregarding the aforementioned documents and finding in favor of appellees. They further contend that appellees did not introduce evidence to carry the burden of controverting those documents which are indications of the intent of the original grantors. We disagree.

■ Appellants' reliance on *Hostetter v. Commonwealth*, 367 Pa. 603, 80 A.2d 719 (1951) is misplaced. *Hostetter* merely stands for the proposition that ancient documents (over thirty years old where transaction is so remote as to be incapable of direct proof by living witnesses) would be admitted as an aid to determine the grantors' original intent. The case should not be construed as holding that such documents shift the burden of establishing original intent.

Instantly, while appellants' deed was given first and constitutes superior title, it begins with a quantity of 31 acres followed by a description by adjoinders, then by courses and distances. The conveyance is not described by natural monuments or metes and bounds, but instead refers to such a description of the property from which it was being carved out. The same is true for appellees' deed. While we acknowledge that quantity is the least reliable measure in real property conveyancing, we see nothing in the record that would suggest a departure from the stated intent of the common grantors' deeds. This is particularly true where a survey of the property was not undertaken until nearly one-hundred years after the conveyance.

We do not see such a finding as disregarding the surveyors, their science or their information. Rather, the key is the intent of the grantor, which is the primary inquiry in boundary disputes. Consequently, recourse to the surveys as aids to determine intent was not necessary. This is a case where there is no evidence in the record that particular monuments for a boundary line were consented to or agreed upon by adjoining landowners or their predecessors in title.

The evidence is more than sufficient to support the findings of the trial court. The quantity was clearly indicated in both original deeds. The language "more or less" recited in the deeds was intended only to cover some slight inaccuracies, but not such a large variation as several acres, as appellant would have this court find. *See Pittsburgh Outdoor Advertising Company v. Surowski*, 164 Pa.Super. 383, 64 A.2d 854 (1949). We conclude that the trial court had a sufficient basis for its finding and did not abuse its discretion.

As we stated in *Pato v. Cernuska*, 342 Pa.Super. 609, 493 A.2d 758 (1985):

> The findings of a trial judge sitting without a jury carry the same weight as a jury verdict, and we will not disturb these findings on appeal absent an error of law or abuse of discretion. *Bigham v. Wenschhof*, 295 Pa.Super. 146, 441 A.2d 391 (1982).

*Id.*, 342 Pa.Super. at 612, 443 A.2d at 759.

We conclude that the plain meaning of the deeds is the best indication of the intent of the common grantors to the parties' predecessors in title. The deeds first mention quantity of land and adjoinders and only later use courses and distances. In our view, this fact, together with the absence of any attempt to survey the land for almost one hundred years, constitutes sufficient evidence for the trial court to find that the intent of the original grantor was to convey the amount of land set forth in the deeds, and not the amount indicated by a later survey.

JUDGMENT AFFIRMED.