677 A.2d 1232

Anna JEDLICKA and Anne Jedlicka, her daughter, Appellees,

v.

Jared W. CLEMMER, III, and Mary E. Clemmer, his wife, Appellants.

Superior Court of Pennsylvania.

Argued April 10, 1996.

Filed June 5, 1996.

648

Jeffrey Lundy, Punxsutawney, for appellants.

650

Jennifer Kirchler, Pittsburgh, for appellees.

Before DEL SOLE, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This appeal arises from a boundary dispute between Jared W. and Mary E. Clemmer, appellants, and Anna and Anne Jedlicka, appellees, which prompted the Jedlickas to file a Complaint in Ejectment. The property in dispute is an 8.5 acre parcel of land which is located between the Jedlicka and Clemmer properties. On this appeal, the Clemmers present the following issue: Did the trial court err in refusing to grant the Clemmers' motions for judgment notwithstanding the verdict (judgment n.o.v.) and for a new trial where the trial court instructed the jury on boundary theories for which the Jedlickas failed to present sufficient evidence. Upon review, we affirm the judgment of the trial court denying the Clemmers' post-trial motions.

The facts of the present case were as follows: In 1956, Turner Streams and Millie Streams subdivided their property located in Indiana County and offered to sell two parcels of approximately 70 acres each. On May 26, 1956, James Jedlicka signed an Article of Agreement and gave $300.00 in cash to hold one of the parcels. Mr. Jedlicka was informed that the remaining parcel of land was to be bought by Walter Naughton and Frank Vegley. On June 7, 1956, James Jedlicka signed a sales agreement which was subsequently recorded in the Indiana Courthouse. The agreement stated that the Jedlickas would receive 70 acres, more or less, but did not set forth the boundaries of the acreage.

Before the parties' deeds were signed, Mr. Jedlicka, Mr. Naughton, Mr. Vegley and Quincey Jones, a surveyor, conducted a survey of both parcels to determine their respective boundaries. The parties agreed upon a specific boundary line which they marked with metal spikes and pins. In addition, the parties agreed to certain monuments, including an old rail fence, specific rocks and large maple trees, which further defined the bounds of each parcel. In December of 1957, the

southern portion of the tract of land was conveyed to the Jedlickas. When Mr. Jedlicka learned that the deed only conveyed 63 acres of land, he requested that Mr. Streams re-survey the land. Mr. Streams responded that the property would not be re-surveyed and that the property line determined by the parties and the surveyor would stand. Thereafter, the Jedlickas, Mr. Naughton and Mr. Vegley claimed their portion of the land as determined during the walking survey. Mr. Jedlicka and/or family members have owned the southern parcel of land since the original conveyance in 1957.

Mr. Naughton and Mr. Vegley owned the northern tract of land for approximately nine years during which time the boundary line walked by all parties was undisputed. Mr. Naughton and Mr. Vegley conveyed the northern parcel in May 1965 to Dennis and Barbara Hagney. The Hagney's owned the property for approximately four years, never contesting the boundary line. In November 1969, the Hagneys conveyed the property to Joseph and Irene Olah who owned the property without dispute for approximately fifteen years. Finally, in April 1984, Mrs. Olah conveyed the property to Jared and Mary Clemmer, appellants herein.

In March of 1991, the Clemmers began entering the 8.5 acres between the two properties which the Jedlickas claimed as their own. In response, the Jedlickas commenced an action in ejectment against the Clemmers. On January 16, 1995, the jury rendered its verdict in favor of the Jedlickas, declaring the disputed 8.5 acres to be their property. The trial court denied the Clemmer's post-trial motions for judgment n.o.v. and a new trial. This appeal followed.

When reviewing the denial of a motion for judgment n.o.v. or new trial, we must view the evidence presented at trial in a light most favorable to the verdict winner, the Jedlickas, granting them the benefit of every inference while rejecting all unfavorable testimony. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 320–23, 640 A.2d 939, 941–42 (1994); *Glover v. Com., Dept. of Transp.*, 167 Pa.Cmwlth. 87, 89–90, 647 A.2d 630, 631 (1994). The denial of a motion for judgment n.o.v.

will be reversed only in the case where there was insufficient competent evidence to sustain the verdict. *Armstrong v. Paoli Memorial Hosp.*, 430 Pa.Super. 36, 41–43, 633 A.2d 605, 608 (1993). "The standard of review for an appellate court is the same as that for a trial court: judgment n.o.v. will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Id.*

■ Specifically, the Clemmers claim that the trial court should have granted their motion for judgment n.o.v. or for a new trial because the jury was instructed on boundary resolution theories on which the Jedlickas presented insufficient evidence. The trial court instructed the jury on three theories: marking of boundary by contracting parties, consentable line by dispute and compromise, and consentable line by recognition and acquiescence. Because the jury rendered a general verdict in favor of the Jedlickas, the record does not reveal upon which theory the verdict was based. When a jury has been presented with several theories pleaded in the alternative, the verdict will be upheld on review if the evidence was sufficient to prove a valid cause under any of the theories. *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 268–70, 545 A.2d 926, 931 (1988). Therefore, we must examine the three theories presented to the jury and determine if the jury could reasonably have rendered a verdict in favor of the Jedlickas under any one of the theories.

■ The first theory, marking of boundary by contracting parties, maintains the well established rule that "where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail." *Pencil v. Buchart*, 380 Pa.Super. 205, 213, 551 A.2d 302, 306 (1988). Monuments are visible markers or indications left on natural or other objects indicating the line of a survey. *Grier v. Pennsylvania Coal Co.*, 128 Pa. 79, 95–96, 18 A. 480, 482 (1889).

■ In the present case, it is undisputed that in 1956, the Jedlickas, Mr. Naughton and Mr. Vegley agreed upon a

boundary line between the two parcels of land and marked such boundary with spikes, pins and specific monuments. From 1956 until 1991, this boundary line had not been disputed by the Jedlickas nor any of the Clemmers' predecessors in interest. Accordingly,

> The general rule is that one who claims title to property through another, regardless of the nature of the transfer whether by the act of the parties or the act of law, is bound by earlier acts or declarations of his predecessor and takes the title *cum onere.* Under this rule all acts and declarations of the owner of land made during the continuation of his interest tending to show the character or extent of his possession or interest, or the location of boundaries, are competent evidence not only against himself but also against those who claim through or under him.

*Plauchak v. Boling,* 439 Pa.Super. 156, 167, 653 A.2d 671, 676 (1995) (quoting *Dawson v. Coulter,* 262 Pa. 566, 571, 106 A. 187, 188 (1919) (citations omitted)). Thus, the Clemmers are bound by the boundary line agreed upon by their predecessors in interest, Mr. Naughton and Mr. Vegley, and acquiesced to by the Hagneys and the Olahs.

When faced with a boundary dispute, the primary function of the court is "to ascertain and effectuate the intent of the parties at the time of the original subdivision." *Plott v. Cole,* 377 Pa.Super. 585, 590–91, 547 A.2d 1216, 1219 (1988). Therefore, we find that the jury could reasonably have found in favor of the Jedlickas based upon the theory of marking boundaries by contracting parties.

The next boundary resolution theory submitted to the jury was the "consentable line" doctrine. There are two ways in which a party can prove a consentable line: by dispute and compromise, or by recognition and acquiescence. The record reveals sufficient evidence to support a finding by the jury that the 1956 boundary line had become a binding consentable line by either theory.

To prove a consentable line by dispute and compromise, the following three elements must be satisfied: 1) a

dispute with regard to the location of a common boundary line, 2) the establishment of a line in compromise of the dispute; and 3) the consent of both parties to that line and the giving up of their respective claims which are inconsistent therewith. *Niles, supra,* 545 A.2d at 930; *Plott, supra,* 547 A.2d at 1220. Under either consentable line theory, it is not necessary that the boundary line be substantial. *Niles, supra,* 545 A.2d at 931. As the court held in *Niles,* the jury in the present case could have found that the 1956 survey line had been laid in settlement of or to avoid a dispute regarding the doubtful location of the boundary, and that both parties had agreed to abide by the survey line and give up any claims of title that were inconsistent with the line.

The elements required to prove a binding consentable line by recognition and acquiescence are: 1) a finding that each party has claimed the land on his side of the line as his own; and 2) a finding that this occupation has occurred for the statutory period of twenty-one years. *Plott, supra,* 547 A.2d at 1221; *Plauchak, supra,* 653 A.2d at 675. As previously stated, once the 1956 survey established the boundary between the two parcels of land, neither the Jedlickas nor any of the Clemmers' predecessors in interest contested the boundary. It was not until 1991, thirty-five years later, that the Clemmers disputed the boundary line. As the Clemmers are bound by the acts and declarations of their predecessors in title, the jury could reasonably have found that they were estopped from denying the boundary line to which their predecessors had acquiesced for more than twenty-one years. *See Plauchak, supra,* 653 A.2d at 677.

Accordingly, we find that the jury's verdict in favor of the Jedlickas could reasonably have been sustained under at least one of the three boundary resolution theories. Therefore, the trial court did not abuse its discretion in denying the Clemmers' motions for judgment n.o.v. and for a new trial based on the instructions submitted to the jury.

Judgment affirmed.