J-A09004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAUREL CREST DEVELOPMENT, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY COWAN AND MARGARET | : | |
| COWAN | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS BUECHE | : | No. 919 WDA 2017 |

Appeal from the Order Entered May 26, 2017
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD 10-012098

BEFORE: BOWES, J., DUBOW, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 27, 2018**

Laurel Crest Development, Inc. ("Plaintiff") appeals from the May 26, 2017 order that dismissed its complaint against Timothy and Margaret Cowan and Thomas Bueche (collectively "Defendants"). We vacate the order and remand for further proceedings consistent with this memorandum.

The facts of the case are straightforward, and largely agreed-upon by both sides. Defendants own plots of land along Melrose Avenue in the Wilburt Park Plan of Acres ("Wilburt Park") that, per their deeds, run 226 feet deep. Plaintiff's land, the Laurel Crest Development of multi-family dwellings ("Laurel Crest"), lies directly to the west of Wilburt Park. Deeds for Plaintiff's and Defendants' properties reference a forty-foot-wide right-of-way for a street, commonly referred to as Tucker Street. Had the paper road been

opened as a thoroughfare, it would have separated Wilburt Park from Laurel Crest. However, Tucker Street never was opened, and, hence, Wilburt Park and Laurel Crest abut one another, with Laurel Crest's easternmost boundary constituting Wilburt Park's westernmost boundary, and vice versa. The purpose of the instant litigation is to determine where precisely that boundary is situated.

Neither Plaintiff nor Defendants were able to produce a document that created the Tucker Street right-of-way across all the affected properties simultaneously. Plaintiff, however, produced the deeds for various properties on both sides of the boundary, indicating that the forty-foot-wide Tucker Street right-of-way is composed of the westernmost twenty feet of the Wilburt Park properties and the easternmost twenty feet of Laurel Crest. Therefore, Plaintiff avers, trees that it had planted in the easternmost twenty feet of its property were wrongfully removed by Mr. Bueche, and both Defendants have erected structures that encroach upon Laurel Crest's land. Hence, Plaintiff brought claims of ejectment and trespass against Defendants.

Defendants, on the other hand, produced surveys indicating that the full forty feet of Tucker Street lies west of, and outside of, Wilburt Park. Accordingly, Defendants maintain, when Tucker Street was not timely opened and each party became the owner of the land in fee to the center of the paper

street,[1] Defendants added an additional twenty feet to their back yards, making them now 246 feet deep. Therefore, although their fence and sheds are outside of the land described in their deeds, Defendants claim that they are not on Laurel Crest's land.

For ease of visualization, we offer the following diagrams representing the positions taken by Plaintiff and Defendants, respectively, as to the location of Tucker Street.[2]



---

[1] *See* 36 P.S. § 1961; *Rahn v. Hess*, 106 A.2d 461 (Pa. 1954).

[2] We have modified Plaintiff's trial Exhibit 1, based upon the testimony and other evidence offered at trial, purely to help illustrate the parties' positions. It does not necessarily reflect the precise locations of all items therein, such as Mr. Cowan's shed and Mr. Bueche's decorative fence.

The trial court adopted Defendant's position, determining that the right-of-way for Tucker Street was located on the forty-foot strip of land west of and adjacent to the Wilburt Park boundary, and did not cover any of Defendants' 226-foot-deep yards. Trial Court Opinion, 11/19/14, at 4. It held that, because Tucker Street was not opened or accepted by the township, Defendants acquired title in fee to the center line of Tucker Street. *Id*. at 5. Based upon these holdings and its view of the properties, the trial court found that the Cowan shed was not located on Laurel Crest's land. However, it appeared that a shed of Mr. Bueche "was over the line and not on his portion of Tucker Street." *Id*. The trial court indicated that it would "take up" Mr. Bueche's encroachment onto Plaintiff's land after an appeal by Plaintif was decided. *Id*. at 6.

Plaintiff appealed following the denial of its post-trial motion. This Court *sua sponte* quashed the appeal as interlocutory, as there was a question of fact remaining regarding alleged encroachment upon Plaintiff's land. Upon remand, and the reception into evidence of a survey of Mr. Bueche's parcel, the trial court determined that Mr. Bueche's shed was not on Laurel Crest's land, and his removal of Laurel Crest's trees had been lawful. Memorandum Order, 5/26/17, at 2-3. Rather than issuing a verdict in favor of Defendants and entering judgment upon it, the trial court terminated the litigation by entering an order dismissing Plaintiff's complaint. *Id*. at 3. Plaintiff filed this timely appeal, which this Court dismissed by order of September 29, 2017,

based upon Plaintiff's failure to file a brief.  Upon Plaintiff's application, this Court reinstated the appeal, and the issues are now ripe for determination. Plaintiff presents the following claims of error for our review.[3]

> A. The determination that the parties' properties are separated by a forty[-]foot right[-]of[-]way is not supported by substantial competent evidence.
>
> B. The right of way appears in the chains of title for the parties' properties and is entirely on the parties' properties.
>
>> 1. The right of way is an easement and therefore, must be located on the parties' lots, rather than on a separate parcel between the parties' lots.
>>
>> 2. The deeds in the chains of title describe the right of way as "covering" the land "within" the parties' properties, not separate from or adjacent to the parties' properties.
>
> C. [Mr.] Cowan and [Mr.] Bueche should be ejected from Laurel Crest's property and [Mr.] Bueche should pay damages for the trees located on Laurel Crest's property that he destroyed.

Plaintiff's brief at 4.

We begin with the applicable legal principles.  "Our standard of review [from an order] denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion."  **Corvin v. Tihansky**, 184 A.3d 986, 992 (Pa.Super. 2018) (internal quotation marks omitted).

---

[3] Plaintiff additionally takes issue with a number of the trial court's evidentiary rulings.  **See** Plaintiff's brief at 4-5.  Given our resolution of the issues listed above, we need not reach the evidentiary questions.

Plaintiff stated claims for ejectment and trespass. "Ejectment is a possessory action wherein a plaintiff must prove the right to exclusive possession vis-a-vis proof of paramount title." ***Roberts v. Estate of Pursley***, 700 A.2d 475, 480 (Pa.Super. 1997) (internal quotation marks omitted). Ejectment is the proper action for determining a disputed title depending on the true boundary line between adjacent property. ***Lehigh Valley Coal Co. v. Midvalley Coal Co.***, 91 A. 427, 428 (Pa. 1914). "The crux of an ejectment action . . . rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title." ***Moore v. Duran***, 687 A.2d 822, 830 (Pa.Super. 1996) (quotation marks omitted).

Trespass liability is established by Restatement (Second) of Torts § 158. ***Gavin v. Loeffelbein***, 161 A.3d 340, 355 (Pa.Super. 2017). That section provides as follows.

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> > (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> >
> > (b) remains on the land, or
> >
> > (c) fails to remove from the land a thing which he is under a duty to remove.

Rest. (2d) Torts § 158. "A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or

to the land or to his things . . . caused by any act done, activity carried on, or condition created by the trespasser[.]" *Id*. at § 162.

Hence, if Plaintiff establishes title to the twenty-foot strip of land adjacent to the west of the boundary line for Wilburt Park (*i.e.*, the line in Defendants' back yards 226 feet from the front of their parcels), Plaintiff is entitled to eject Defendants from that land (*i.e.*, the removal of the sheds and fence). If Plaintiff establishes that Defendants damaged that land (*e.g.*, by removing the trees therefrom), Plaintiff is entitled to damages for the trespass. The primary question, thus, is the location of the Tucker Street easement as described in the deed, and the current boundary between Wilburt Park and Laurel Crest. Accordingly, we consider the legal principles applicable to that determination.

The purpose of the legal rules regarding boundaries "is to ascertain the actual location of the boundary as made at the time." *Appeals of Borough of Dallas*, 82 A.2d 676, 679 (Pa.Super. 1951). "The important and controlling consideration, where there is a conflict as to a boundary, is the parties' intention, whether express or shown by surrounding circumstances." *Id*. (internal quotation marks omitted). "The general rules of construction applied to deeds and grants are applicable in the case of boundaries." *Id*. Those rules include the principles that "the nature and quantity of the interest conveyed must be ascertained from the instrument itself and . . . and we seek to ascertain not what the parties may have intended by the language but what

is the meaning of the words;" that "effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning;" and that "to ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Murphy v. Karnek*, 160 A.3d 850, 858-59 (Pa.Super. 2017) (quoting *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa.Super. 2002)). "As with any question of law, we review the trial court's construction of a deed *de novo*." *Id*. at 859.

At trial, Plaintiff offered into evidence deeds for Laurel Crest and its predecessors in title. Starting in 1946, those deeds contain the following language.

> THIS conveyance is made and accepted under and subject to an easement or right of way in, on and over the second herein described lot or piece of ground and in, on and over the abutting easterly twenty feet of the first herein described lot or piece of ground both of which together with a strip of like and equal width off the westerly sides of Lots Nos. 1 to 6, both included, of the Wilburt Park Plan of Acres, is hereby dedicated to the use of the public by the parties hereto, to be used as and for a public road or street the same as other roads and streets in [Harrison] Township are used, Said road or street being bounded and, described as follows, to-wit:

> BEGINNING at the centerline of the Burtner Road as shown in said plan end extending northerly of even width, throughout, of 40 feet with the westerly line of said plan as the center line of said road or street to the northerly line of said Hawthorne Street.

Plaintiff's Trial Exhibit 19n.

Also before the trial court were the deeds of Defendants and their predecessors in title back to the time before the Wilburt Park plan was recorded. Although Tucker Street does not appear on the recorded plan, starting in the 1940s, the deeds contained language which is the mirror-image of the right-of-way description in the relevant Laurel Crest deeds. Specific to the parcels at issue in the instant case, the Cowans' deed includes the following provision.

> THIS CONVEYANCE is made under and subject to the easement of right of way for the easterly half of Twenty (20) feet of a Forty (40) foot street or road extending or to extend northerly from the Burtner Road and covering or to cover the westerly Twenty (20) feet of the within described lot or piece of ground adjacent to the westerly line thereof which strip of ground Twenty (20) feet wide is hereby dedicated to the use of the public as and for a part of the public street or road to be used by the public as other streets and roads in the vicinity are used.

Plaintiff's Trial Exhibit 19a. Mr. Bueche's deed contains nearly-identical language.

> FURTHER, this conveyance is made under and subject to the easement or right of way for the easterly half, or twenty (20) feet, of a forty foot road or street extending or to extend northerly from the said Burtner Road and covering the westerly twenty (20) feet of the within described lot or piece of ground adjacent to the westerly one thereof, which strip of ground twenty (20) feet in width has been heretofore dedicated to the use of the public as and for a part of a public road or street to be used by the public as other roads or street in the vicinity are used.

Bueche Deed, 1/27/10.[4]

Defendants argued, and the trial court accepted, that the descriptions in Defendant's deeds placed the twenty-foot-wide right-of-way adjacent to the western boundary of Defendants' parcels, but wholly outside of the metes and bounds of their land. In other words, the right-of-way extended for twenty feet to the west of the north-south boundary line located 226 feet from the front of their lots. *See*, *e.g.*, N.T. Trial, 5/3-6/14, at 269-70. Plaintiffs contend that the trial court's construction is contrary to the plain and unambiguous language of the deeds. *See*, *e.g.*, Plaintiff's brief at 35. We agree.

Plaintiff's deed clearly indicates that the right-of-way for the street is composed of eastern and western halves that are each twenty feet wide. The eastern half is the twenty-foot-wide strip running across the easternmost portion of its own land. The western twenty feet is made up of "a strip of like and equal width off the westerly sides of Lots Nos. 1 to 6, both included, of the Wilburt Park Plan of Acres[.]"[5] Plaintiff's Trial Exhibit 19n.

_____

[4] The transcript reveals that Mr. Bueche's deed was offered and admitted at trial as Defendants' Exhibit G. *See* N.T. Trial, 5/3-6/14, at 133, 197-98. However, Defendants' trial exhibits are not included in the certified record. Nonetheless, the deed is properly before us as it is included in the certified record, *inter alia*, as exhibits to both Plaintiff's and Defendants' pretrial statements.

[5] The original Wilburt Park plan has since been further subdivided. The lots of Bueche and the Cowans are located within lots four and five of original plan. N.T. Trial, 5/3-6/14, at 97-98.

The language of the easement in Plaintiff's chain of title is entirely consistent with the provisions of Defendants' deeds. They indicate that the described properties are subject to "the easement of right of way for the easterly half of Twenty (20) feet of a Forty (40) foot street or road[.]" Plaintiff's Trial Exhibit 19a. That easement extends to the north from Burtner Road "covering or to cover the westerly Twenty (20) feet of the within described lot[.]" *Id*. In other words, the easement runs over the twenty-foot "piece of ground adjacent to the westerly line" of Defendant's lots." *Id*. The western half of the right-of-way is on Plaintiff's land, and the eastern half on Defendants' land.[6]

Defendants' deeds thus clearly provide that their lands were conveyed to them subject to a twenty-foot-wide easement on the lands that they acquired. Even Defendants' experts agreed that one cannot grant oneself an easement over someone else's land. N.T. Trial, 5/3-6/14, at 293. Indeed, it

---

[6] It is clear that Tucker Street was not the typical paper street. Such usually are created as part of a subdivision plan, accounted for in determining the metes and bounds of the individual lots. Accordingly, in the common scenario, the land set aside for the streets is not included within the description of the land sold to the buyers of the lots adjacent to the streets. *See*, *e.g.*, *Rahn v. Hess*, 106 A.2d 461, 462 (Pa. 1954) (discussing rights of landowners to unopened street within plan that had subdivided a tract of land into lots and streets). Rather, Tucker Street was created after-the-fact between two plans by establishing easements across lands already owned by residents or developers. As such, Tucker Street truly existed nowhere but on paper, as there was no space set aside for it between the properties that would have abutted it. As Plaintiff's counsel coined at trial, this was "the poor man's way of creating a paper street." N.T. Trial, 5/3-6/14, at 321.

would be nonsensical to indicate in a deed that the property conveyed was "subject to" an easement wholly on different land, and that had absolutely had no effect on the land described in the deed. Moreover, if the deeds for some reason were referencing the easement for Tucker Street as existing outside of the bounds of the lots in question, it stands to reason that they would reference the entire forty-foot width of the potential street, not merely the easterly twenty-foot-wide half of it. The indication that the land described in each Defendant's deed was **subject to** an easement that was **half** of a forty-foot-wide street **covering** the westernmost twenty feet **of the within described lot** unequivocally indicates that half of Tucker Street was located within the 226-foot depth of Defendants' lots, not outside of them.

In ruling in favor of Defendants, the trial court relied upon twenty-first century surveys and a gas company right-of-way. *See* Trial Court Opinion, 11/19/14, at 4 (discussing surveys conducted for both Defendants by H.J. Martone); stating "I find the best determination o[f] how Tucker Street was created is relative to the Cowans' garden shed that was involved when a gas line was installed"). However, those documents are not incorporated by reference in the parties' deeds, and in fact post-date by sixty years the creation of the easement in or prior to the 1940s. *See* Plan of Survey (Cowan), 9/22/04 and Plan of Survey (Bueche), 7/12/10 (included in Exhibit 2 of Defendants' pretrial statement). The fact that a gas company had obtained a right-of-way for a gas line to run within the Tucker Street

- 12 -

easement, and that it reached an agreement with Mr. Cowan to re-route that line around a shed that he built on that easement, has no bearing on whether the Cowans' deed describes the right-of-way as being on or outside its property. Rather, it is axiomatic that, where the language of a deed is clear, extrinsic evidence cannot trump the deed itself. *Pennsylvania Elec. Co. v. Waltman*, 670 A.2d 1165, 1169 (Pa.Super. 1995) ("When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed.") (internal quotation marks omitted).

Therefore, we hold that the trial court erred as a matter of law in concluding that the right-of-way for Tucker Street was wholly outside of Wilburt Park. The road, if it had been opened, would have run along the westernmost twenty feet of Defendants' property and the easternmost twenty feet of Plaintiff's property. In other words, the grading and paving of Tucker Street would have subtracted twenty feet from Plaintiff's and Defendants' yards. Hence, the failure of the road to be opened left Plaintiff and Defendants with only the land described in their deeds; neither gained any land, as there was no un-owned land between their lots that had been reserved for Tucker Street.

The record is clear that Defendants' yards are still 226 feet deep. Thus, any structures more than 226 feet from the front of their parcels are

encroaching on Plaintiff's land. Further, Defendants are subject to liability in trespass if they did damage to Plaintiff's land.

It is undisputed that Mr. Cowan's shed lies beyond the 226-foot boundary of his property. *See* N.T. Trial, 5/3/14, at 207, 268 (testimony from Mr. Cowan that the shed is between 226 and 246 feet from the front of his property; testimony from Defendants' expert that the shed is "[o]utside of the 226-foot distance"). Mr. Bueche similarly acknowledged that he felled trees that were not within his 226-foot-deep yard, and that his decorative fence was erected past the 226-foot mark. *See id.* at 228-29, 243-46. Given our determination that Laurel Crest has title to the land immediately west of that boundary line located 226 feet from the front of Defendant's parcels, there is no question that Plaintiff is entitled to a verdict in its favor on its ejectment claims. However, a new trial is necessary for the fact-finder to determine Defendants' respective liability for damages on the trespass claims.

Accordingly, we vacate the trial court's May 26, 2017 order that dismissed Plaintiff's complaint. We remand for the trial court to enter a verdict in favor of Plaintiff on the ejectment claims and to conduct a trial to determine damages on the trespass claims.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/27/2018</u>